392 So.2d 1026 (1981)
John BRUCE, Appellant/Cross-Appellee,
v.
Rod HEIMAN and American Home Assurance Company, Appellees/Cross-Appellants.
No. 80-511.
District Court of Appeal of Florida, Fifth District.
January 28, 1981.
Rehearing Denied March 10, 1981.
*1027 James E. Shepherd, Orlando, for appellant/cross-appellee.
J. David Walsh, Daytona Beach, for appellees/cross-appellants.
SHARP, Judge.
Bruce appeals from a summary judgment denying him any recovery against Rod Heiman, manager of Orlando Speed World, and the owner's insurance carrier, American Home Assurance Company. The appellees cross-appeal from the lower court's denial of their motion for judgment in accordance with their motion for a directed verdict. The jury returned special verdicts finding Bruce 60% responsible for his injuries suffered at the speedway and appellees 40% responsible, and finding that Bruce knowingly signed a release form. We shall consider the summary judgment entered after the jury verdict[1] as a final judgment following the entry of a directed verdict, and affirm the result.
A motion for directed verdict should be granted when the trial court concludes the evidence, viewed most favorably to the non-moving party, cannot support in the minds of the jurors any reasonable difference as to any material fact or inference. Zilber Cab Company v. Capeletti Brothers, Inc., 303 So.2d 360 (Fla. 3d DCA 1974); Cook v. Estate of Mills, 374 So.2d 599 (Fla. 3d DCA 1979).
Bruce was a racer and had entered his car at the speedway. In order to participate in the race and to gain admission to those areas at the track where spectators were not generally permitted to enter, he had to pay a special fee and sign the following release form:
I ... DO HEREBY:
1. RELEASE, DISCHARGE AND COVENANT NOT TO SUE the track operators, track owners, land owners, racing association, and each of them, their officers, agents, and employees (all hereinafter collectively referred to as `releasees') from any and all claims and liability arising out of strict liability or ordinary negligence of releasees or any other participant which causes the undersigned injury, death, damages or property damages. I hereby covenant to hold releasees harmless and indemnify releasees for any claim judgment or expense releasees may incur arising out of my activities or presence in the restricted area.
2. Understand that my entry into the restricted area ... contains DANGER AND RISK OF INJURY OR DEATH, that conditions of the racing surface change from time to time and may become more hazardous, and that there is INHERENT DANGER in racing which I appreciate and voluntarily assume, because I choose so to do. I have observed many races of the type that I seek to participate in, I have inspected the racing surface, access roads, shoulders, equipment, barriers or lack thereof, lighting or lack thereof, and the weather conditions. I further know that other contestants and participants pose a danger to me, nevertheless, I VOLUNTARILY ELECT TO ACCEPT ALL RISKS connected with *1028 my entry into the restricted area and/or participation in any racing events.
3. ACKNOWLEDGE that I am aware of all track and equipment safety regulations and I have complied with each regulation. If I have failed so to do, I ASSUME ALL RISK for myself and assume all liability to others for such failure, and I hereby RELEASE releasees for any failure in inspecting my vehicle or others. I am not an agent, servant or employee of releasees and no oral representations or inducements have been made to me to sign this agreement. If any portion of this agreement is held invalid, it is agreed that the balance thereof shall continue in full legal force and effect... .
The testimony showed that Bruce entered the speedway through a special gate across the track from the spectator stand, and he raced his car that night before it developed mechanical problems. Everyone who entered that gate was required to sign the release form and pay a special price for admission to the "pit" area. When his car had to be withdrawn, Bruce joined a group of fifteen to twenty other people near the second turn to watch the concluding races. A wheel came off a race car, was struck by another, and bounced high over a fence to hit Bruce on the head, rendering him unconscious.
The stand where Bruce was injured was neither the "pit" area nor the "spectator" area. But no one gained admission to that area through the spectator gate, and the appellant was unable to show that anyone in that area had not signed the release form. The management had strict rules prohibiting people who entered the spectator area from crossing to the pit area, and the area from crossing to the pit area, and the area where Bruce was injured.
We conclude that the evidence conclusively showed that appellant was in the "restricted" area of the track, and therefore he is barred from recovery by the release of liability form. Thomas v. Sports Car Club of America, Inc., 386 So.2d 272 (Fla. 4th DCA 1980); Corpus Cristi Speedway, Inc. v. Morton, 279 S.W.2d 903 (Tex.Civ.App. 1955).
AFFIRMED.
DAUKSCH, C.J., and ORFINGER, J., concur.
NOTES
[1] There is no basis for this kind of proceeding in the rules. A summary judgment should precede a trial, not follow it. Howarth Trust v. Howarth, 310 So.2d 57 (Fla. 1st DCA 1975); Fish Carburetor Corp. v. Great American Ins. Co., 125 So.2d 889 (Fla. 1st DCA 1961). The holding of a trial posits there are questions of fact to be resolved, and this properly precludes entry of a summary judgment.