832 So.2d 270 (2002)
KITCHENS OF THE OCEANS, INC. and Albert F. Margus, Jr., Appellants,
v.
McGLADREY & PULLEN, LLP, an Iowa limited liability partnership, Michael A. Balter, an individual, and Salvatore Catanese, an individual, Appellees.
No. 4D01-3758.
District Court of Appeal of Florida, Fourth District.
December 11, 2002.
*271 I. Jeffrey Pheterson and Peter H. Schmidt of Schmidt, Pheterson & Bleau, Boca Raton, for appellants.
Ronald B. Ravikoff and Thierry Olivier Desmet of Zuckerman Spaeder, LLP, Miami, and Robert R. Watson Sidley, Austin, Brown & Wood, Chicago, Illinois, for appellees.
FARMER, J.
This case involves a claim by a client against an accounting firm (auditors) for negligence in its audit of certain financial statements. The trial court granted the auditor's motion to dismiss the claim for failure to state a cause of action. We reverse.
The auditors first argued that the engagement agreement's hold harmless provision barred the client's claim for breach of contract. We disagree.
The engagement agreement provided that auditors would perform as follows:
"We will conduct the audit in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audit to obtain reasonable, rather than absolute, assurance about whether the financial statements are free of material misstatement whether caused by error, fraudulent financial reporting, or misappropriation of assets.
...
"An audit also includes obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing and extent of audit procedures to be performed."
The agreement also added that:
"As you know, management is responsible for (1) the preparation of [client's] financial statements, (2) establishing and maintaining effective internal control over financial reporting and safeguarding assets, (3) properly recording transactions in the records, (4) identifying and ensuring that [client] complies with the laws and regulations applicable to its activities, and (5) making all financial records and related information available to us and (6) for adjusting the financial statement to correct material misstatements."
The complaint accuses the auditors of negligence and breach of contract in planning and designing the audit for client's particular business and, thereby, failing to detect an ongoing embezzlement scheme by client's controller.
The hold harmless provision relied on by the auditors states:
"[Client] hereby indemnifies [auditors] and its partners and employees and holds them harmless from all claims, liabilities, losses, and costs arising in circumstances where there has been a knowing misrepresentation by a member of [client's] management, regardless of whether such person was acting in [client's] interest. This indemnification will survive termination of this letter." *272 In Cox Cable Corp. v. Gulf Power, 591 So.2d 627, 629 (Fla.1992), the court explained that contracts of indemnification which attempt to indemnify a party against its own wrongful acts are viewed with disfavor in Florida and will be enforced only if they express an intent to indemnify against the indemnitee's own wrongful acts in clear and unequivocal terms. See also Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla.1979) (provision requiring lessor of scaffolding from manufacturer to assume "all responsibility for claims asserted by any person whatever growing out of the erection and maintenance, use or possession of said equipment" and to hold harmless from all such claims held insufficient to provide indemnity for manufacturer's own negligence). Univ. Plaza Shopping Ctr., Inc. v. Stewart, 272 So.2d 507, 508-09 (Fla.1973) ("we choose to follow the rationale ... requiring a specific provision protecting the indemnitee from liability caused by his own negligence."); and we do not read this provision of the engagement agreement to state in "clear and unequivocal" terms an intent that the auditors were being indemnified for their own negligence in failing to detect a defalcation by one of the client's management.
Although there is a difference between contracts of indemnification and hold-harmless agreements, we deem the central holding of the above cases to apply as well to a hold harmless agreement that, as here, functions much like an indemnification agreement. As one court has explained:
"Although there is a distinction in definition between an exculpatory clause and an indemnity clause in a contract, they both attempt to shift ultimate responsibility for negligent injury, and so are generally construed by the same principles of law. An exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing his injury. An indemnification clause attempts to shift the responsibility for the payment of damages to someone other than the negligent party (sometimes back to the injured party, thus producing the same result as an exculpatory provision)."
O'Connell v. Walt Disney World Co., 413 So.2d 444, 446 (Fla. 5th DCA 1982); see, e.g., Van Tuyn v. Zurich Am. Ins. Co., 447 So.2d 318, 320 (Fla. 4th DCA 1984) (explaining that if an exculpatory clause is to be effective it must clearly state that it releases the party from liability for its own negligence).
We therefore find that auditors' cases in support of dismissal are distinguishable. The text of the hold-harmless provision is distinguishable from the provisions in the authorities argued by auditors. See, e.g., Winn Dixie Stores, Inc. v. D & J Constr. Co., 633 So.2d 65, 65-66 (Fla. 4th DCA 1994) (holding that indemnity agreement covered the claim made against Winn Dixie upon which it was seeking contractual indemnity from D & J as the indemnity agreement covered "any claim or loss arising in any manner ... notwithstanding such accident or damage may have been caused in whole or in part or negligence of you [Winn Dixie] or any of your servants, agents or employees."); Joseph L. Rozier Mach. Co. v. Nilo Barge Line, Inc., 318 So.2d 557, 557-58 (Fla. 2d DCA 1975) (holding that lessor should be held harmless because contract made it unmistakably clear that the customer was to indemnify lessor against losses due to any negligence of lessor by stating, "Customer shall defend, indemnify and hold forever harmless Lessor ... against all loss, liability and expense ... due or claimed to be due to any negligence of Lessor, employees or agents of Lessor or any other person."); Middleton v. Lomaskin, 266 So.2d 678, 679 (Fla. 3d DCA 1972) (enforcing provision stating "LANDLORD shall *273 not be liable for ... any and all claims for loss, damage or injury of any nature whatsoever to person or property resulting in any way from or in any fashion arising from, connected with or resulting from occupancy and use of the demised premises and the property of which said premises are a part, whether caused by negligent acts of LANDLORD, its agents or servants or otherwise."). The hold harmless provision in this case fails to contain similar language specifically and clearly providing that client agreed to release auditors from their own negligence.
We briefly address the remaining reasons auditors argue to justify the dismissal. The Florida Supreme Court has specifically provided the following requirements to state a cause of action for professional negligence, which do not require a specific allegation of a duty to detect fraud or embezzlement:
(a) the defendant carried on a business in the state of Florida of accounting and auditing;
(b) as such accountants and auditors, defendants undertook to make annual audits of the books and accounts of the plaintiff for a specific fiscal year;
(c) defendants completed such undertaking by completing an audit of the plaintiff's financial books and accounts for that fiscal year;
(d) a careful and proper audit of the books and accounts would have shown that an employee embezzled money during the audited fiscal year;
(e) defendants did not detect such embezzlement; and
(f) plaintiffs suffered a loss due to the failure.
KPMG Peat Marwick v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 765 So.2d 36 (Fla.2000). The alleged duty in this case was that auditors would conduct a careful and proper audit. Client has alleged a breach of that duty.
We also conclude that client's president has stated a cause of action on his own behalf. In his amended complaint, the president alleged that auditors knew or should have known that he was one of the limited group of persons for whose benefit and guidance the audit conclusion would be used in connection with the advancement of the credit line. He relied upon the auditors' conclusion by allowing client to increase the line of credit even though the advance was beyond client's financial means. He suffered a total loss in value of his stock as a result of the foreclosure of the stock. Thus, contrary to auditor's argument, accepting the well pleaded allegations as true, the president has alleged that in his individual capacity he relied upon the audit conclusion and suffered damages as a result of that reliance. See First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla.1990) (auditors may be held liable to third parties not in privity who are one of a limited group of persons for whose benefit and guidance the auditor intends to supply the information or knows that the client intends to supply it; and through reliance upon it in a transaction that the auditor intends the information to influence or knows the client so intends or in a substantially similar transaction); and NationsBank, N.A. v. KPMG Peat Marwick, LLP, 813 So.2d 964 (Fla. 4th DCA 2002) (auditors knew that client was furnishing audited financial statement to lender who would rely on such statement in deciding whether to extend credit to client and thus auditors could be liable to lenders for negligently furnishing false information).
REVERSED.
GUNTHER and STONE, JJ., concur.