866 So.2d 108 (2004)
Ruby HOPKINS and Ronald Hopkins, Appellants,
v.
THE BOAT CLUB, INC., a Florida Corporation d/b/a Embark Boat Club and Billy R. Brawner, Appellees.
No. 1D02-3385.
District Court of Appeal of Florida, First District.
February 10, 2004.
*109 Chalmers H. Barnes of Barnes, Barnes & Cohen, P.A., Jacksonville, for Appellant.
Daniel Vazquez of Holland, Singer & Miller, P.A., Miami, and Robert S. Glazier of Law Office of Robert S. Glazier, Miami, for Appellee.
Daniel Vazquez of Holland, Singer & Miller, P.A., Miami, and Robert S. Glazier of Law Office of Robert S. Glazier, Miami, for Appellee.
ALLEN, J.
The appellants, Ruby and Ronald Hopkins, who were the plaintiffs below, challenge a final summary judgment in favor of the appellees, The Boat Club, Inc. ("the Boat Club") and Billy Brawner, who were the defendants below. Because we conclude that the exculpatory clauses signed by the appellants were legally sufficient under controlling federal maritime law to release the appellees from liability for injuries caused by the appellees' negligence, we affirm the order under review.
Mr. Hopkins entered into a written membership agreement with the Boat Club by which he secured the right to use various boats owned by the Boat Club. Mr. Hopkins and his wife, Ms. Hopkins, then executed individual releases, each entitled "Assumption and Acknowledgment of Risks and Release of Liability Agreement," and each providing, in relevant part, as follows:
As a member of [the Boat Club], or as a guest of a member, in consideration of being allowed to participate in watersport events and activities, and/or being provided with watercrafts and/or watersport recreational property or services, for myself and any minor children for whom I am parent, legal guardian or otherwise responsible, and for my/our heirs, personal representatives or assigns, I hereby:
1. ACKNOWLEDGMENT OF RISKS. Acknowledge that some, but not all, of the risks of participating in watersport activities include:
*110 1. Changing water flow, tides, currents, wave action and ships' wakes,
2. Collisions with any of the following: other participants, the watercraft, other watercraft, and manmade or natural objects,
3. Wind, inclement weather, lightning, variances and extremes of wind, weather, and temperature,
4. My sense of balance, physical coordination, ability to operate equipment, swim and/or follow directions,
5. Collision, capsizing, sinking or other hazard which results in wetness, injury, exposure to the elements, hypothermia, and/or drowning,
6. The presence of insects and marine life forms,
7. Equipment failure or operator error,
8. Heat or sun related injuries or illnesses, including sunburn, sunstroke or dehydration,
9. Fatigue, chill and/or dizziness, which may diminish my/our reaction, time and increase the risk of an accident.
2. EXPRESS ASSUMPTIONS OF RISK AND RESPONSIBILITY. Agree to assume responsibility for all the risk of the activity, whether identified above or not. My/our participation in the activity is purely voluntary. I assume full responsibility for myself and my minor children for whom I am responsible, for any bodily injury, accident, illness, paralysis, death, loss of personal property and expenses thereof as a result of any accident that may occur while I/we participate in the activity.
3. RELEASE. Release [the Boat Club], its principals, directors, officers, agents, employees and volunteers, their insurers and each and every land owner, municipal and/or governmental agency upon whose property an activity is conducted and their insurers, from any and all liability of any nature for any and all injury or damage (including death) to me or my minor children and other persons as a result of my/our participation in the activity, regardless of the cause.
On May 1, 2001, Mr. and Ms. Hopkins first used a watercraft under the terms of the membership agreement. As required by the agreement, they participated in a "checkout cruise" with one of the Boat Club's employees, Mr. Brawner, who was to instruct Mr. Hopkins on the proper and safe operation of the boat. While operating the craft under Mr. Brawner's direction and supervision, Mr. Hopkins crossed a large boat wake at a high rate of speed, resulting in Ms. Hopkins being thrown out of her seat and seriously injured.
The appellants sued the appellees, alleging that the negligence of Mr. Brawner and the Boat Club had caused Ms. Hopkins's injuries. The appellees later filed a motion for summary judgment in which they asserted that the releases signed by the appellants were sufficiently clear and unequivocal to overcome the general rule that exculpatory clauses seeking to release a party from its own negligence are disfavored. The trial court agreed and entered the final summary judgment under review.[1]
This case falls within the contours of federal maritime jurisdiction. See *111 Borden v. Phillips, 752 So.2d 69 (Fla. 1st DCA 2000); Beckman v. Rick's Watercraft Rentals, 719 So.2d 1025 (Fla. 3d DCA 1998); Mink v. Genmar Industries, 29 F.3d 1543 (11th Cir.1994).[2] Federal maritime law controls the rights and liabilities of the parties in such cases. See Diesel "Repower," Inc. v. Islander Investments, 271 F.3d 1318 (11th Cir.2001). State law may be applied only where it does not conflict with or disturb the uniformity of maritime law. Id. at 1323-1324. See also Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); Steelmet, Inc. v. Caribe Towing Corp., 779 F.2d 1485 (11th Cir.1986); Norwegian Cruise Lines, Ltd. v. Zareno, 712 So.2d 791 (Fla. 3d DCA 1998).
Relying upon Florida decisional law, the appellants argue that the releases they signed were legally insufficient to relieve the appellees of liability for their own negligence because the releases did not specifically refer to the appellees' "negligence." Exculpatory clauses seeking to absolve a party from liability for injuries resulting from its own negligent acts are operative in Florida, but are looked upon with disfavor. See Borden v. Phillips, supra; Foster v. Matthews, 714 So.2d 1215 (Fla. 3d DCA 1998); Van Tuyn v. Zurich American Insurance Co., 447 So.2d 318 (Fla. 4th DCA 1984). For such a clause to be effective, the release of liability for the party's own negligence must be clearly and unequivocally stated. Id. Rigorously adhering to this principle, some Florida courts have applied a bright-line rule that a release is ineffective to relieve a releasee of responsibility for its negligence unless the release specifically references the releasee's "negligence."[3] The appellants in the present case rely upon the decisions of these courts.
Federal law is consistent with Florida law in its disfavored treatment of exculpatory clauses seeking to release a party from its own negligence. As is the case under Florida law, the intent to relieve a party from responsibility for its own negligence must be clearly expressed in a release for it to be effective under federal law. See Krazek v. Mountain River Tours, Inc., 884 F.2d 163 (4th Cir. 1989). But federal courts have consistently refused to hold that words such as "negligence" or "negligent acts" are indispensable. Id. at 166; United States v. Seckinger, 397 U.S. 203, 213 n. 17, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); accord Sander v. Alexander Richardson Investments, 334 F.3d 712 (8th Cir.2002). State laws requiring specific reference to the releasee's "negligence" therefore conflict with federal law and may not be applied in cases involving federal maritime law. For example, in a maritime negligence case from Missouri, the Eighth Circuit wrote as follows:
We recognize that the Supreme Court of Missouri requires something more, see Alack v. Vic Tanny Int'l of Mo., Inc., *112 923 S.W.2d 330, 337 (Mo.1996) (holding that exculpatory clause in health club membership did not exculpate the facility from liability for a personal injury stemming from the facilities negligence because the clause did not use the term "negligence," "fault," or equivalents), but we are applying federal maritime law, which must control our construction of the contract at issue.
Sander, 334 F.3d at 716. See also Harrison v. S/V Wanderer, 25 F.Supp.2d 754 (S.D.Tex.1998). Consequently, state bright-line rules requiring explicit reference to a releasee's "negligence," such as the rule applied in the Florida decisions upon which the appellants rely, are preempted by federal law.
The appellants also argue that 46 U.S.C.A.App., section 183c invalidates the releases involved in this case. This section provides:
It shall be unlawful for the manager, agent, master, or owner of any vessel transporting passengers between ports of the United States or between any such port and a foreign port to insert in any rule, regulation, contract, or agreement any provision or limitation (1) purporting, in the event of loss of life or bodily injury arising from the negligence or fault of such owner or his servants, to relieve such owner, master, or agent from liability, or from liability beyond any stipulated amount, for such loss or injury, or (2) purporting in such event to lessen, weaken, or avoid the right of any claimant to a trial by court of competent jurisdiction on the question of liability for such loss or injury, or the measure or damages therefor. All such provisions or limitations contained in any such rule, regulation, contract, or agreement are declared to be against public policy and shall be null and void and of no effect.
Because there is no indication that the Boat Club was operating as a commercial carrier or that the transportation involved was occurring from port to port, this provision does not apply in the present case. See Shultz v. Florida Keys Dive Center, Inc., 224 F.3d 1269 (11th Cir.2000); see also Olivelli v. Sappo Corporation, Inc., 225 F.Supp.2d 109 (D.P.R.2002); Moore v. American Scantic Line, Inc., 30 F.Supp. 843 (S.D.N.Y.1939).
The ultimate issue for our determination is whether, in accordance with controlling federal law, the exculpatory clauses in this case validly absolved the appellees of liability for injuries caused by their own negligence. This determination is guided by the U.S. Supreme Court's instruction in Seckinger, 397 U.S. at 213 n. 17, 90 S.Ct. 880, that "[c]ontract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." We note that there is no indication that the parties were in unequal bargaining positions, and we find it significant that the releases made specific reference to a number of risks involved in the underlying recreational activity, including "ship's wakes." Further, the exculpatory clauses detailed that the waiver applied not just to the Boat Club, but also to its principals, directors, officers, agents, employees, and the like, and provided that they served to release those persons and entities from any and all liability of any nature for any and all injury or damage as a result of participating in the activity, "regardless of the cause." This language was sufficient to inform an ordinary and knowledgeable person that he or she was releasing the appellees from liability for injuries caused by the appellees' negligence, and the appellants' *113 executions of the releases therefore effected this intent.
The appellants' remaining arguments are rejected, and the order under review is affirmed.
ERVIN and LEWIS, JJ., concur.
NOTES
[1] The parties explicitly acknowledge that the final summary judgment disposed of the entire case, and thus jurisdiction properly lies in this court.
[2] Under the savings to suitors clause of the Judiciary Act of 1789, currently codified as 28 U.S.C. section 1333(1), state courts have concurrent jurisdiction with the federal courts as to in personam claims based on maritime torts.
[3] Other Florida courts have eschewed the bright-line rule applied in these decisions. Compare Witt v. Dolphin Research Center, Inc., 582 So.2d 27 (Fla. 3d DCA 1991) with Hardage Enterprises, Inc. v. Fidesys Corporation, N.V., 570 So.2d 436 (Fla. 5th DCA 1990) and Lantz v. Iron Horse Saloon, Inc., 717 So.2d 590 (Fla. 5th DCA 1998). The first district is more closely aligned with the view that the appellee's negligence must be specifically mentioned. See, e.g., Levine v. A. Madley Corporation, 516 So.2d 1101 (Fla. 1st DCA 1987).