932 So.2d 575 (2006)
Richard T. CAIN, Appellant,
v.
Louis L. BANKA, II, etc., et al., Appellees.
No. 5D05-3986.
District Court of Appeal of Florida, Fifth District.
June 30, 2006.
*576 Arthur J. Ranson, III, and C. Ryan Morgan, of Shuffield, Lowman & Wilson, P.A., Orlando, for Appellant.
Laurie D. Beechner, of Marshall, Dennehey, Warner, Coleman & Goggin, A Professional Association, Orlando, for Appellees.
PLEUS, C.J.
The issue on this appeal concerns whether an exculpatory clause contained in *577 a master release, signed by the plaintiff in 1999 when he began riding at a motocross track, barred him from recovering for personal injuries he sustained in 2002 while riding his motocross bike at the track. The trial court found the release to be clear and unambiguous and granted summary judgment, ruling the plaintiff's claim was barred. The plaintiff maintains the release is unenforceable and urges reversal of the summary final judgment.
The action stems from an accident that occurred on May 15, 2002, at a track operated under the fictitious name Motocross World of Central Florida. The plaintiff alleges he was participating in a practice on the night in question and was attempting to maneuver a "single to table" jump when his motocross bike collided with the table portion of the jump. He sued, claiming the track and table surface were negligently designed and maintained. He commenced a lawsuit against Louis L. Banka, II, (Banka) who was, among other things, an employee of the owner of the track, DGB Racing, Inc.
According to Banka, in 1999, the track required all individuals desirous of participating in races and practices to become a member and to sign a master release. In turn, members received a membership card which had an expiration date on it and which further stated the member had a release on file.
Banka testified by way of deposition that the plaintiff became a member at the track in 1999 and was issued a membership card certifying he had executed a release that was on file. The plaintiff did not deny this though neither the actual membership card nor a copy were introduced below.
The release, which the plaintiff concedes he signed in 1999, does not mention any membership and provides as follows:
In consideration of receiving permission from DGB RACING, INCORPORATED, to enter upon the premises of this raceway, located in Orlando, Orange County, Florida, the receipt of such permission being hereby acknowledged, and in further consideration of receiving permission to participate, when qualified, either as a rider, mechanic, owner, attendant, or in any other capacity, in any race or practice held at the above location, the receipt of such permission being also hereby acknowledged, each of the undersigned hereby release DGB RACING, INCORPORATED, the promoter, and its agents, officers, servants, and employees, of and from any and all liability, claims, demands, actions, and causes of action whatsoever, arising out of or related to any loss, damage or injury, including death, that may be sustained by the undersigned, or any property of the undersigned, while in, on, or upon the above mentioned premises, or any premises leased to, owned by, sanctioned by or under the control or supervision of DGB RACING, INCORPORATED, or in route to or from the above mentioned premises, or any other premises leased to or under the control or supervision [sic] DGB RACING, INCORPORATED.
The undersigned being duly aware of the risks and hazards inherent upon entering upon said above mentioned premises and/or in participating in any races or practices held at the above mentioned premises, hereby elects voluntarily to enter upon said premises, knowing their present condition and knowing that said conditions may become more hazardous and dangerous during the time that the undersigned is upon the above mentioned premises. The undersigned hereby voluntarily assumes all risks of loss, damage, injury, including death, that may be sustained by the undersigned *578 while in, on or upon the above mentioned premises.
The parties agree that on May 15, 2002, the plaintiff did not sign a check-in sheet or a release when he entered the track with his motorbike. Banka confirmed that sometime prior to the accident, the track began utilizing another release at the request of its insurance carrier. According to Banka, this new release was not meant to void or nullify the master release and was merely part of a sign-in process at the gate that included on it exculpatory language, for every race and practice. Banka explained the track still required the execution of the master release as part of the membership process since it had discovered some individuals attempting to bypass the sign-in area.
The trial court's legal determination, that the 1999 release was effective to bar the plaintiff's negligence claim against Banka, as an employee of DGB Racing, Inc., is reviewed de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000). Because we conclude that the court's determination fails to comport with Florida law governing enforceability of exculpatory clauses, we reverse.
The plaintiff concedes that as a general proposition, exculpatory clauses may extinguish liability for claims against premise owner/operators for injuries caused by the negligence of the owner/operator but claims the 1999 release which he signed does not satisfy Florida law. He argues that the release is not clear and unequivocal as required by Florida law, and that further failure to sign it contemporaneously with the event being released is fatal to its enforceability.
An exculpatory clause purports to deny an injured party the right to recover damages from a person negligently causing his injury. Kitchens of the Oceans, Inc. v. McGladrey & Pullen LLP, 832 So.2d 270 (Fla. 4th DCA 2002). Exculpatory clauses are disfavored and are enforceable only where and to the extent that the intention to be relieved from liability was made clear and unequivocal and the wording must be so clear and understandable that an ordinary and knowledgeable person will know what he is contracting away. Gayon v. Bally's Total Fitness Corp., 802 So.2d 420 (Fla. 3d DCA 2001); Raveson v. Walt Disney World Co., 793 So.2d 1171 (Fla. 5th DCA 2001).
This district has rejected the need for express language referring to release of the defendant for "negligence" or "negligent acts" in order to render a release effective to bar a negligence action. See Lantz v. Iron Horse Saloon, Inc., 717 So.2d 590 (Fla. 5th DCA 1998). The other districts take a "bright line" position requiring such express language. See Witt v. Dolphin Research Center, Inc., 582 So.2d 27 (Fla. 3d DCA 1991); Levine v. A. Madley Corp., 516 So.2d 1101 (Fla. 1st DCA 1987); Rosenberg v. Cape Coral Plumbing, Inc., 920 So.2d 61 (Fla. 2d DCA 2005); Van Tuyn v. Zurich American Ins. Co., 447 So.2d 318 (Fla. 4th DCA 1984). Indeed, every one of the cases cited by the defendant as establishing the efficacy of the instant release to bar the plaintiff's negligence claim involved releases which expressly referenced, in one form or another, the releasee's "negligence."
For instance, in Theis v. J & J Racing Promotions, 571 So.2d 92 (Fla. 2d DCA 1990), the appellate court held that the release and waiver of liability executed by a race car driver immediately prior to the race in which he was killed, barred a negligence action against the race track operator. The release and waiver included language releasing the operator "from all liability . . . whether caused by the negligence *579 of the releasees or otherwise." The appellate court explained that "the release and waiver signed by the defendant clearly excused the appellee from liability for acts or omissions resulting from their own negligence or otherwise" and encompassed all forms of negligence, simple or gross. Id. at 94.
Likewise, in DeBoer v. Florida Offroaders Driver's Ass'n, Inc., 622 So.2d 1134 (Fla. 5th DCA 1993), this Court affirmed summary judgment in favor of a racetrack operator in an action brought by a spectator's estate where the release and waiver of liability contained language releasing the operator from all liability "whether caused by the negligence of the releasees or otherwise.". Accord Bruce v. Heiman, 392 So.2d 1026 (Fla. 5th DCA 1981) (affirming summary judgment in favor of speedway based on release of liability which racer signed in order to enter restricted area of speedway and which released speedway from "any and all claims and liability arising out of strict liability or ordinary negligence of releasees. . . ."); Borden v. Phillips, 752 So.2d 69 (Fla. 1st DCA 2000) (enforcing release which absolved defendant scuba training company from liability for "injury, death or other damages ... that may occur as a result... of the negligence of any party, including the Released Parties. . . .").
Nevertheless, this district, in conformity with federal law, has expressly eschewed the need to use terms such as "negligence" or "negligent acts" in order to validly release negligence claims. Lantz; See Hopkins v. The Boat Club, Inc., 866 So.2d 108 (Fla. 1st DCA 2004). The instant exculpatory clause, by absolving the defendant of "any and all liability, claims, demands, actions, and causes of action whatsoever" is sufficient under Lantz to encompass the plaintiff's negligence action.
The plaintiff argues that the terms of the exculpatory clause were not clear and unequivocal so as to inform him that he was contracting his rights away for all time in the future. The plaintiff points out that the language of the release refers to entering upon the premises "knowing of their present condition and knowing that said conditions may become more hazardous and dangerous during the time that the undersigned is upon the above mentioned premises." He argues this language suggests the release only covers the period of time from signing the release until the person leaves the premises, that he could not have known of the conditions on future days, let alone those which might exist two years after signing the release. The thrust of the plaintiff's argument in this regard is as follows:
If the purpose of the Release was to cover all future times a person might be on the property, it should state the Release applies each and every time the person is on the premises, or state that the Release applies to all future entrances to the premises. Adding language suggesting the Release applies for all future events would then clearly and unequivocally tell a person that they are not only releasing their rights for the day they signed it, but for anytime they return to the premises in the future. Signing away one's rights for eternity should be stated more clearly than in the Release signed by [the plaintiff].
Interestingly, the plaintiff does not rely directly on evidence that conditions at the track had materially changed between the date he executed the release and the date he sustained his injury, even though such evidence appears to exist. Banka himself testified in his deposition that he substantially reconfigured the track just prior to the date of the plaintiff's accident. Nevertheless, even assuming materially unchanged *580 conditions, we conclude that the language of the 1999 written release was not sufficiently clear and unequivocal to inform the plaintiff that he was executing a perpetual release of personal injury claims.
The release itself contains no express language informing the plaintiff that it covered each and every occasion in the future that he visited the track. Given that exculpatory clauses are disfavored in the law and are strictly construed against the party seeking to be relieved of liability, Sunny Isles Marina, Inc. v. Adulami, 706 So.2d 920 (Fla. 3d DCA 1998), those intended to encompass present as well as future events must state so with clarity and precision. The 1999 release contains no language providing for an effective period and the burden is on the party seeking to absolve itself from liability to do so in clear and unequivocal terms.
Use of the plurals "races" or "practices" in the release does not, in and of itself, clearly and unequivocally establish that the release applied to all future visits. One need not hail from Daytona Beach to know that multiple races or practices are frequently held at a racetrack over a single day.
Banka argues that the circumstances surrounding execution of the 1999 release establish clearly that it was part of a membership program at the track and was designed and understood to last for as long as the plaintiff remained a member of the track.
The plaintiff did not deny that he had been issued a membership card which was still operative and thus it was established that the plaintiff was part of a membership program used by the track. The 1999 release executed by the plaintiff, however, does not mention membership as part of execution of the release or that acceptance of a membership card created a release perpetual in nature. The defendant cites to no authority allowing a court to go beyond the four corners of the written release in order to supplement it with essential terms, whether by course of conduct, custom or otherwise. In fact, the law is otherwise  an exculpatory provision which is ambiguous is unenforceable. Sunny Isles Marina.
The defendant's effort to use the membership program to supplement the absence of an operative period in the 1999 release not only runs afoul of the principle which places the burden on a party seeking to absolve itself of liability to do so in clear and unequivocal terms, but it eliminates the need for a release, designed to apply to future conduct or activity, to contain clear language to that effect.
This is not to accept the plaintiff's position that for a release to be effective, it necessarily must be signed contemporaneously with the event or activity being released. While the plaintiff cites a plethora of cases involving execution of exculpatory clauses in recreational events contemporaneous with the event, he cites to no legal authority requiring contemporaneous execution of the release.
An exculpatory clause contained in a health club membership contract was upheld in Gayon v. Bally's Total Fitness Corp., 802 So.2d 420 (Fla. 3d DCA 2001). While the language of the provision was not set out in the decision, it seems eminently reasonable that a properly worded exculpatory clause may have legal effect beyond a single activity or event. A health club membership affords an ideal illustration. It would be unduly burdensome and redundant to require a member to execute a release on each and every visit to a health club. Likewise in Hopkins v. The Boat Club, Inc., 866 So.2d 108 (Fla. 1st DCA 2004), the court validated a release which was part of a boat club *581 membership. In Hopkins, unlike here, the release expressly referred to the signatory's membership status. An exculpatory clause can be skillfully drafted to insulate the defendant from liability while at the same time informing the member that the provision has legal effect each time the facility is used. In the instant case the language of the 1999 release does not in any way indicate connection to a membership program nor does it reflect, clearly and unequivocally, an intent to release the defendant from liability for future visits to the track.
The defendant cites to well established contract law holding that the absence of a time period in a contract is not fatal to its enforceability. See e.g., Sound City v. Kessler, 316 So.2d 315, 316 (Fla. 1st DCA 1975) ("in the absence of an express provision as to duration in the contract, the intention of the parties with respect to duration and termination is to be determined from the surrounding circumstances and by application of a reasonable construction of the agreement as a whole. . . ."); Collins v. Pic-Town Water Works, Inc., 166 So.2d 760 (Fla. 2d DCA 1964) (where contract is indefinite as to time, contract can last indefinitely until one of the parties gives reasonable notice of termination to the other).
In this context, however, this principle of contract law collides with the requirement that an exculpatory clause, disfavored in the law, be clear and unequivocal. Allowing a defendant to invoke the parties' course of conduct or other surrounding circumstances to interpret, supplement, or amplify a written release would completely emasculate the well-settled, salutary rule governing enforceability of exculpatory clauses. The 1999 release is not clear and unequivocal in that it was insufficient to inform an ordinary and knowledgeable party that he was perpetually contracting away his right to sue the defendant for negligence. Sunny Isles Marina. See also Covert v. South Florida Stadium Corp., 762 So.2d 938 (Fla. 3d DCA 2000) (ambiguous exculpatory clause contained in contract which season ticket holder signed in purchasing ticket insufficient to bar personal injury claim).
The defendant additionally relied below on section 549.09, Florida Statutes, as barring this action. The trial court granted summary judgment based upon the common law and did not address applicability of the statute. The defendant nevertheless argues that the statute provides an additional basis for the summary judgment.
Section 549.09 entitled, "Motorsport Non-Spectator Liability Release" provides under subsection (2):
Any person who operates a closed-course motorsport facility may require, as a condition of admission to any nonspectator part of such facility, the signing of a liability release form. The persons or entities owning, leasing or operating the facility or sponsoring or sanctioning the motorsport event shall not be liable to a nonspectator or her or his heirs, representative, or assigns for negligence which proximately causes injury or property damage to the nonspectator within a nonspectator area during the period of time covered by the release.
It appears from the record that the track met the requirements of the statute. While subsection (2) authorizes track operators to condition admission by non-spectators on execution of a liability release form, it does not address what constitutes a valid liability release. There is no indication that the statute is designed to alter in any way the common law principles governing the validity of exculpatory clauses in this context. In short, the statute *582 presupposes a release which comports with Florida law governing exculpatory clauses. The statute does not provide an independent, more relaxed basis for analyzing the validity of an exculpatory clause.
The final judgment and summary judgment in favor of Banka are reversed as the 1999 release is ineffective to bar the plaintiff's 2002 negligence claim against him.
REVERSED AND REMANDED.
SAWAYA and LAWSON, JJ., concur.