[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 15, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13728

_____

D. C. Docket No. 05-00419-CV-ORL-28KRS

CARL DELANO TORJAGBO,

                                                            Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 15, 2008)**

Before BLACK and MARCUS, Circuit Judges, and EVANS,[*] District Judge.

PER CURIAM:

_____

    [*] Honorable Orinda Evans, United States District Judge for the Northern District of
Georgia, sitting by designation.

Pro se Appellant Carl Torjagbo is a licensed pilot who once served as a flight instructor for the Patrick Air Force Base Aero Club, an organization that provides recreational flying opportunities to members of the military. While flying with a student on February 1, 2002, Torjagbo's engine lost power and he was forced to make an emergency landing. During the course of the landing, Torjagbo broke his wrist and jaw.

After filing an unsuccessful administrative grievance, Torjagbo filed suit in the United States District Court for the Middle District of Florida under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), alleging the Government should be held liable for his injuries because his crash was caused by (1) the Government's negligent maintenance and repair of the aircraft he was flying and (2) military air traffic control's negligence in handling his call for help. The district court dismissed Torjagbo's negligent air traffic control claim under Fed. R. Civ. P. 12(b)(1) because Torjagbo failed to exhaust his administrative remedies as required by 28 U.S.C. § 2675(a). The court entered summary judgment in the Government's favor on the negligent maintenance claim, finding a validly-executed and legally-enforceable covenant not to sue barred Torjagbo from bringing suit. Torjagbo appeals; we affirm.

I.

Before bringing an action in district court under the FTCA, a claimant must first exhaust his administrative remedies by filing an administrative grievance with the appropriate federal agency within two years of the date the claim accrues. 28 U.S.C. §§ 2675(a), 2401(b). Failure to timely exhaust is a jurisdictional bar to litigation in federal court, and a claim that is not filed properly with the appropriate agency within two years of accrual is subject to dismissal in district court for lack of subject matter jurisdiction. *See Dalrymple v. United States*, 460 F.3d 1318, 1326 (11th Cir. 2006) (affirming dismissal of suit for lack of subject matter jurisdiction when claimant failed to provide agency with timely demand for sum certain as required by 28 C.F.R. § 14.2(a)); *see also T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 961 (8th Cir. 2006) (collecting cases and concluding "a plaintiff's compliance with the statute of limitations is prerequisite to the district court's jurisdiction over a suit against the United States under the FTCA"). When a claim is timely filed under 28 U.S.C. § 2401(b), a claimant is free to amend his agency complaint any time during the administrative grievance process; however, he may not do so once the agency has taken final action. *See* 28 C.F.R. § 14.2(c).

Torjagbo's claim that air traffic control personnel at Patrick Air Force Base were negligent in their handling of his plane malfunction accrued on February 1, 2002, the date the accident occurred. Therefore, Torjagbo had two years (or until February 1, 2004) in which to file his administrative grievance. On May 13, 2003, Torjagbo filed a grievance in which he alleged the Government had been negligent in the maintenance and repair of his plane; however, he did not attempt to raise his negligent air traffic control claim until April 15, 2005—more than one year after the statute of limitations expired under § 2401(b) and three days after the agency issued its final action denying his negligent maintenance claim.

Despite the untimeliness of his proposed amendment, Torjagbo argues on appeal that he is entitled to equitable tolling. He alleges the lawyer who represented him at the beginning of his administrative appeal did not have access to a transcript of the exchange between Torjagbo and air traffic control at the time the original claim was filed, and that the lack of a written transcript excuses the untimely filing.

Equitable tolling is a form of extraordinary relief that courts have extended "only sparingly," *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 457 (1990), and only in situations in which a litigant has made an "untimely fil[ing] because of extraordinary circumstances that are both beyond his

4

control and unavoidable even with diligence," *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir.1999). Even assuming equitable tolling were available for untimely claims brought under the FTCA (a question this Court has not previously answered and which we do not answer today), there are several obvious problems with Torjagbo's position. First, as a party to the conversation with air traffic control, he did not need access to transcripts in order to bring his claim to the attention of the administrative agency. He knew what he said and what air traffic control had relayed back to him; he needed no additional evidence in order to raise a claim. Second, it is irrelevant that Torjagbo's lawyer was unaware of the conversation at the time he filed Torjagbo's administrative grievance. Not only was it Torjagbo's duty to provide his lawyer with relevant facts, but more importantly, Torjagbo provides no reason why he did not amend the claim at any time during the two years following the accident.

Even if equitable tolling is available under the FTCA, the doctrine would not excuse Torjagbo's failure to timely file his negligent air traffic control claim because he did not act with the required diligence. In the absence of equitable tolling, Torjagbo's negligent air traffic control claim is untimely under 28 U.S.C. §

5

2401(b).  *See also* 28 C.F.R. § 14.2(c).  Consequently, we affirm the district court's dismissal of the claim.

II.

Torjagbo raises two challenges to the district court's entry of summary judgment on his negligent maintenance and repair claim.  First, he contends the district court improperly weighed the facts when it found Torjagbo had signed a covenant not to sue—a fact he now vehemently denies.  Second, he contends the court erred by finding the terms of the covenant are enforceable.

*A.  Authenticity of the Covenant Not to Sue*

In connection with its request for summary judgment, the Government produced from Torjagbo's Aero Club file a copy of a document titled "Covenant Not to Sue and Indemnity Agreement."  The document is dated May 15, 2001, bears Carl Torjagbo's printed name and apparent signature, and states in relevant part:

> I, <u>Carl Torjagbo</u>, am about to voluntarily participate in various activities, including flying activities, of the [left blank in original] Aero Club as a pilot, student pilot[,] copilot, instructor, or passenger. In consideration of the Aero Club permitting me to participate in these activities, I . . . hereby covenant and agree that I will never institute, prosecute, o[r] in any way aid in the institution or prosecution of, any demand, claim, or suit against the US Government for any destruction, loss, damage, or injury *(including death)* to my person or property which may occur from any cause

6

whatsoever as a result of my participation in the activities of the Aero Club.

. . . .

I know, understand, and agree that I am freely assuming the risk of my personal injury, death, or property damage, loss or destruction that may result while participating in Aero Club activities, including such injuries, death, damage, loss or destruction as may be caused by the negligence of the US Government.

Dist. Ct. Dkt. #29, Exh. 5.

During the administrative grievance process, Torjagbo admitted signing the

covenant but argued it was unenforceable. In a letter to agency decisionmakers

dated April 15, 2005, Torjagbo asserted:

As for the Covenant not to sue, it is not clear and unequivocal. It is ambiguous[.] And both you and [sic] know it will be thrown out of court because

a. It does not have my full name. The Pilot in command is Carl Delano Torjagbo not Carl Torjagbo

b. It is not a Barr [sic] if it is negligence. There are provision [sic] in public law that Prevents you from using that to shield yourself from torts you commit.

c. It was not filled out properly. It does not say which aero club I was working for. Both you and I know that these agreements are over a period of time. We are required to renew them every year. My understanding when I was Signing that was not to sue on the date stated on the sheet. There is no Law in the history of mankind that allows you to contract your right's [sic] away Forever.

7

*Id.* During deposition, however, Torjagbo both denied the signature on the document was his and testified he "did not remember" signing the covenant not to sue. (He did admit, however, that the signature resembled his own.) Torjagbo contends the court erred by resolving a dispute of material fact in the Government's favor on summary judgment.

The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a): "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 106 S. Ct. 2505, 2511 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968)). The standard for creating a genuine dispute of material fact requires courts to "make all *reasonable* inferences in favor of the party opposing summary judgment," *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (emphasis added), not to make all *possible* inferences in the nonmoving party's favor.

8

In this case, the district court determined Torjagbo failed to raise a genuine issue of fact regarding the authenticity of his signature. Torjagbo's admission during the administrative grievance process (which he does not convincingly contest), combined with his equivocal statements at deposition that the signature was not his but that he did not "remember" whether he had signed the covenant, gives rise to only one reasonable inference: he signed the covenant but does not wish to be bound by it. Based on the evidence in the record,[1] a reasonable jury could not find in his favor on the authenticity of the covenant not to sue. Consequently, the district court did not err by finding it had been validly executed.

B. *Enforceability of the Covenant Not to Sue*

After determining Torjagbo had signed the covenant not to sue, the district court went on to conclude the covenant was enforceable. Torjagbo challenges this decision, contending the covenant is invalid because it (1) contains no time limitation specifying the dates covered by the release and (2) employs overly broad language.

---

[1] In its opinion, the district court discussed allegations made in Torjagbo's supplemental response to the Government's motion for summary judgment. In that response, Torjagbo sets forth in detail new allegations regarding the events surrounding his alleged decision not to sign the covenant. These allegations were not the subject of an affidavit or any other form of admissible evidence; therefore, we have not considered them.

This case was filed in Florida; therefore, we apply Florida's conflict of law rules to determine the substantive law that governs the parties' covenant not to sue. *Richards v. United States*, 369 U.S. 1, 11, 82 S. Ct. 585, 592 (1962) (holding the law of the forum state governs all substantive and conflict of law questions in an FTCA action). Under Florida's conflict of law rules, "in the absence of a contractual provision specifying governing law, a contract, other than one for performance of services, is governed by law of the state in which the contract is made." *Shaps v. Provident Life & Acc. Ins. Co.*, 244 F.3d 876, 881 (11th Cir. 2001); *Shaps v. Provident Life & Acc. Ins. Co.*, 826 So. 2d 250, 254 n.3 (Fla. 2002). The Covenant Not to Sue was executed in Florida, and therefore is governed by Florida's substantive law. *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295 (Fla. 1988).

Under Florida law, "a party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract." *Med. Ctr. Health Plan v. Brick*, 572 So. 2d 548, 551 (Fla. 1st DCA 1990). The covenant Torjagbo signed stated plainly that he would never institute any suit against the Government for any "injury *(including death)* to [his] person or property which m[ight] occur from any cause whatsoever as a result of [his] participation in the activities of the Aero Club." By signing the document, he further attested that he was "freely assuming

10

the risk of [his] personal injury, . . . including such injuries . . . as may be caused by the negligence of the US Government."

Nevertheless, Torjagbo contends the covenant is unenforceable because it does not specify the time during which it remained in effect.  He argues that Aero Club members could not be certain when they signed the release whether it applied to Aero Club activities undertaken on the day they signed the document, or whether it extended indefinitely into the future.

As a general matter, Torjagbo has a point.  Florida courts construe exculpatory clauses strictly against the party seeking to be relieved of liability, and in the past have refused to enforce similar releases that do not make explicit the term covered by the release.  *See, e.g.*, *Cain v. Banka*, 932 So. 2d 575, 580 (Fla. 5th DCA 2006) (holding exculpatory clause without specified duration "was not sufficiently clear and unequivocal to inform the plaintiff that he was executing a perpetual release of personal injury claims").  But a technical omission is harmless when a party understands the meaning of the document he is signing.  The requirement that an exculpatory clause employ "clear and understandable" language is designed to insure that "an ordinary and knowledgeable person will know what he is contracting away."  *See id.* at 578.  In his April 15, 2005 letter to agency decisionmakers, Torjagbo acknowledged the covenant he signed was

11

required to be renewed only once each year. Torjagbo's covenant is dated May 15, 2001. His accident occurred February 1, 2002. By his own admission, then, he understood the covenant to cover the time during which he was injured.

Torjagbo's overbreadth argument is equally unavailing. Although exculpatory clauses are "disfavored" under Florida law, they are enforceable so long as they are "clear and unequivocal." *Shaw v. Premier Health and Fitness Center, Inc.*, 937 So. 2d 1204, 1204-05 (Fla. 1st DCA 2006). In cases involving recreational clubs, Florida courts have repeatedly upheld the validity of exculpatory clauses in similar to the one at issue in this case. *See Gayon v. Bally's Total Fitness Corp.*, 802 So. 2d 420 (Fla. 3d DCA 2001); *Hopkins v. The Boat Club, Inc.*, 866 So. 2d 108 (Fla. 1st DCA 2004).

Torjagbo has not distinguished his covenant not to sue from similar covenants found enforceable by Florida courts, and we find no independent ground for doing so. The covenant states explicitly that "[i]n consideration of the Aero Club permitting [Torjagbo] to participate in [flying activities, he] will never institute, prosecute, o[r] in any way aid in the institution or prosecution of, any demand, claim, or suit against the US Government for any . . . injury *(including death)* to [his] person or property which may occur from any cause whatsoever as a result of [his] participation in the activities of the Aero Club." He agreed to

12

"freely assum[e] the risk of [his] personal injury, death, or property damage . . . , including such injuries, death, damage, loss or destruction as may be caused by the negligence of the US Government." By signing the covenant, Torjagbo clearly and unequivocally waived his right to bring his negligence action for physical injuries he incurred while serving as a flight instructor for the Patrick Air Force Base Aero Club. Consequently, the district court did not err by concluding the covenant barred Torjagbo's negligent maintenance and repair claim against the Government.

## III.

The district court did not err by dismissing Torjagbo's negligent air traffic control claim for lack of subject matter jurisdiction. Similarly, the court did not err by finding Torjagbo had failed to raise a genuine dispute of material fact regarding the authenticity of the covenant not to sue he executed on May 15, 2001. Finally, because the covenant is enforceable under Florida law, the district court did not err by granting the Government's motion for summary judgment on Torjagbo's negligent maintenance and repair claim. The judgment of the district court is **AFFIRMED**.