WALLIS, J.
Appellant, Owen Peterson, appeals orders granting summary judgment for Ap-pellees: Walt Disney Parks and Resorts U.S., Inc. (“Disney”); Flare Fittings, Inc. (“Flare”); and Crossfire Paintball, Inc. d/b/a Crossfire Inc. (“Crossfire”). Peterson argues that summary judgment for Disney, based upon a waiver, was improper due to the ambiguities present in the document. Peterson further argues that summary judgment for Flare and Crossfire was improper because they failed to sufficiently prove their entitlement to relief under Florida Rule of Civil Procedure 1.510(c). Because we find that granting the Appellees summary judgment was improper, we reverse.
On November 8, 2006, Peterson arrived at the Wide World of Sports Complex — a property owned by Disney — for the 2006 PSP Orlando World Cup (the “Event”), hosted by Paintball Sports Promotions, LLC (“PSP”), from November 7 to 12. Disney stated that the Event consisted primarily of a paintball tournament, but that it also “served as a trade show where vendors set up booths outdoors to advertise and sell paintball-related items to participants and spectators.” Peterson was not scheduled to compete in the games until November 10.
Peterson alleged that, while walking through the vendor area on November 8, he was injured when a balloon labelled with Crossfire’s corporate logo made con *653 tact with his head. Peterson described the balloon as 10 feet in diameter, tethered to a tree beside a tent operated by Flare or Crossfire, and flying between 70 to 100 feet in the air. Peterson claimed that the impact from the balloon buckled his knees, knocked his sunglasses from his head, and left him immediately dazed and in pain. Peterson speculated that a gust of wind may have blown the balloon towards the ground, but admitted uncertainty about the exact cause of the balloon’s sudden descent. Peterson testified that two of his friends witnessed the balloon hitting his head and that, immediately after the incident, a third friend approached the tent to notify the staff of the incident and tell them to bring down the balloon. After the staff complied with the request, Peterson reported the incident to a Disney manager, who allegedly assured him that Disney would pay for his bills and told him to go to the hospital to “get [himself] checked out.” Later that day, Peterson sought medical treatment at a hospital and, after negative X-ray results, was discharged with prescribed muscle relaxants and pain relievers.
On November 10, 2006, Peterson returned to the Wide World of Sports Complex to compete in the paintball competition. Before participating in the games, Peterson was required to sign the “Disney Sports Waiver and Permission Form” (the ‘Waiver”). The Waiver identified PSP as the “Event Host” and defined the “Sport Type(s)” as “Paintball and any other activities conducted at or in conjunction with the Event.”
The relevant exculpatory clause of the Waiver states:
In consideration of my and/or my child or ward’s participation in the Sport Type(s) and Event referenced above and any related activities (collectively, the “Event”), wherever the Event may occur, I agree to assume all risks incidental to such participation (which risks may include, among other things, muscle injuries and broken bones), on my own and/or my child or ward’s behalf, and on behalf of my and/or my child or ward’s heirs executors, administrators and next of kin, I hereby release, covenant not to sue, and forever discharge the Released Parties of and from all liabilities, claims, actions, damages, costs or expenses of any nature arising out of or in any way connected with my or my child or ward’s participation in the Event and/or any such activities, and further agree to indemnify and hold each of the Released Parties harmless from and against any and all such liabilities, claims, actions, damages, costs or expenses including, but not limited to, all attorneys’ fees and disbursements up through and including any appeal. I understand this release and indemnity includes any claims based on the negligence, action or inaction of any of the Released Parties and covers bodily injury (including death), property damage, and loss by theft or otherwise, whether suffered by me or my child or ward either before, during or after such participation. I declare that I and (if participating) my child or ward are physically fit and have the skill level required to participate in the Event and/or any such activities. I further authorize medical treatment for me and/or my child or ward, at my cost, if the need arises.
(emphasis added).
Peterson read the Waiver, understood that his signature declared his fitness to play paintball, and then signed the Waiver.[1] Peterson’s team was eliminated from *654 the competition on November 10, and Peterson returned to his home in Virginia on November 12.
On November 5, 2010, Peterson filed the Complaint against Flare, Crossfire, and Disney for injuries allegedly sustained from the balloon impact. Count I of the Complaint, against Flare, alleged that Flare negligently created a “dangerous condition” at the vendor tent. Count II alleged substantially identical claims against Crossfire. Counts III and V, against Disney, alleged general negligence claims and allegations that Disney failed to control the Event on its property.[2] In February 2011, Flare, Crossfire, and Disney responded with answers and affirmative defenses, generally denying liability. Two years later, Disney added an affirmative defense that Peterson’s execution of the Waiver, “expressly waiving and releasing all claims and agreeing to indemnify [Disney],” barred his claims against Disney.
On February 28, 2013, Disney filed a Motion for Final Summary Judgment and Supporting Memorandum of Law, arguing solely that it was entitled to summary judgment as a result of Peterson signing the Waiver. On April 2, 2013, Flare filed a Motion for Summary Judgment and Incorporated Memorandum of Law. Flare argued that Peterson failed to carry his initial burden of proving negligence because the record contained no evidence that it or any related party: (1) had a duty to maintain the Event area; (2) caused a dangerous condition on the premises; (3) failed to maintain the premises; (4) failed to inspect the premises; (5) failed to provide adequate staff; (6) failed to adequately train its employees; or (7) failed to act reasonably. On April 16, 2013, Crossfire filed a Motion for Summary Judgment and Incorporated Memorandum of Law. Crossfire also argued that Peterson failed to introduce summary judgment evidence to establish that Crossfire had breached any duty resulting in injury.
Peterson filed brief pro se responses to Appellees’ motions for summary judgment, contesting the validity of the Waiver as a post-claim release of Disney’s liability— signed after the actionable injury occurred — and generally alleging that Crossfire and Flare had not met their respective evidentiary burdens to justify the granting of summary judgment. The only applicable summary judgment evidence before the trial court at the time of the hearing on the motions was Peterson’s deposition, taken on February 16, 2012, and May 8, 2012. The lower court ultimately granted all three motions for summary judgment.[3]
“Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.” Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000) (citing Menendez v. Palms W. Condo. Ass’n, 736 So.2d 58 (Fla. 1st DCA 1999)). “Thus, our standard of review is de novo.” Id.
We first turn to Disney’s argument that the Waiver’s exculpatory clause *655 released Disney from any liability for Peterson’s injury. We note generally that “exculpatory clause[s] purport[] to deny an injured party the right to recover damages from a person negligently causing his injury.” Cain v. Banka, 932 So.2d 575, 578 (Fla. 5th DCA 2006) (citing Kitchens of-the Oceans, Inc. v. McGladrey & Pullen, LLP, 832 So.2d 270 (Fla. 4th DCA 2002)). These clauses are “disfavored in the law because they relieve one party of the obligation to use due care and shift the risk of injury to the party who is probably the least equipped to take the necessary precautions to avoid injury and bear the risk of loss.” Applegate v. Cable Water Ski, L.C., 974 So.2d 1112, 1114 (Fla. 5th DCA 2008) (citing Cain, 932 So.2d at 578). Such clauses are “strictly construed against the party seeking to be relieved of liability.” Sunny Isles Marina, Inc. v. Adulami, 706 So.2d 920, 922 (Fla. 3d DCA 1998).
[Ejxeulpatory clauses are enforceable only where and to the extent that the intention to be relieved from liability is made clear and unequivocal. The wording must be so clear and understandable that an ordinary and knowledgeable person will know what he is contracting away. A phrase in a contract is ambiguous when it is of uncertain meaning, and thus may be fairly understood in more ways than one.
Tatman v. Space Coast Kennel Club, Inc., 27 So.3d 108, 110 (Fla. 5th DCA 2009) (citations omitted). Unlike a pre-claim exculpatory clause, which requires specific language because of the uncertainty of future events, consideration for a post-claim release — at issue in this case — arises from the parties’ awareness “of the circumstances related to the injury and the injured party can reasonably be held accountable for fully appreciating the implications of a general release.” Abis v. Tudin, D.V.M., P.A., 18 So.3d 666, 669 (Fla. 2d DCA 2009). No awareness or accountability occurred here.
Our analysis of this post-claim release must evaluate whether both parties knowingly gave clear and valid consideration in the Waiver. The Waiver specifically stated, “In consideration of my and/or my child or ward’s participation in the Sport Type(s) and Event referenced above and any related activities (collectively, the ‘Event’), wherever the Event may occur, I agree to assume all risks incidental to such participation.” The Waiver further notified the “Participant” that by signing the Waiver he declared himself “physically fit” and possessing “the skill level required to participate in the Event and/or any such activities.” This language clearly focused the signatory on the paintball competition, not the vendor area. The parties further admitted that Disney did not require people accessing only the vendor area to sign the Waiver.
We reject Disney’s argument that the Waiver’s reference to injuries suffered “before, during or after such participation” included the November 8 incident. The Waiver failed to clarify that it included any incident that occurred before its signing, and thus failed to notify Peterson of a post-claim release.
We next turn our attention to Flare and Crossfire. We recognize that a party seeking summary judgment must meet a high burden of proof to justify relief, as clearly stated in Metsker v. Carefree/Scott Fetzer Co., 90 So.3d 973, 977 (Fla. 2d DCA 2012):
Summary judgment is proper only if: (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered, and (2) the moving party is entitled to a judgment as a matter of law. “If the record reflects the existence of any gen *656 uine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper.”
(citations omitted). Crossfire argues that Peterson’s case, based on his own deposition testimony, was “built entirely on assumption, speculation, and conjecture” and, thus, insufficient to defeat Crossfire’s and Flare’s motions for summary judgment. However, Crossfire and Flare have ignored the burden of proof that accompanied their motions for summary judgment. Specifically, “summary judgment may properly be granted in negligence cases only where the moving party has successfully met his burden of proving the absence of a genuine issue of material fact.” McCabe v. Walt Disney World Co., 350 So.2d 814, 815 (Fla. 4th DCA 1977) (citing Holl v. Talcott, 191 So.2d 40 (Fla.1966); Grail v. Risden, 167 So.2d 610 (Fla. 2d DCA 1964)). Summary judgment is improper “even where there is no conflict in the evidence, provided that inferences reasonably deducible therefrom cast doubt upon material issues.” McCabe, 350 So.2d at 815. Crossfire correctly notes that Peterson presented very little evidence demonstrating a dangerous condition at the Event or a duty owed by Crossfire. However, Peterson provided evidence that the offending balloon displayed Crossfire’s logo and was tethered to a tree located near a tent operated by Flare or Crossfire. Further, Peterson provided testimony that, following the accident and upon request by Peterson’s friend, a representative from the tent removed the balloon from the vendor area. This evidence presented issues of fact regarding Flare’s and Crossfire’s liability for positioning, securing, and maintaining the offending balloon in a condition safe for people accessing the vendor area.
The lack of convincing evidence in favor of a party opposing summary judgment is not the same as conclusive evidence in favor of the party seeking summary judgment. Although the evidence in support of Peterson’s case is tenuous, Flare and Crossfire failed to meet the “high burden” of demonstrating that Peterson “cannot prevail.” See Lake Sue Dev. Co., Inc. v. Keewin Real Prop. Co., 950 So.2d 1280, 1282 n. 3 (Fla. 5th DCA 2007). Both Flare and Crossfire neglected to present any summary judgment evidence establishing a lack of liability on their part, choosing to simply allege that Peterson’s evidence was insufficient to prevail on the merits. Accordingly, the lower court erred by granting summary judgment in favor of Disney, Flare, and Crossfire.
REVERSED and REMANDED.
EVANDER, J., and HERNDON, L.D., Associate Judge, concur.

. Although Peterson alleged that he did not sign the Waiver until November 10, the docu *654 ment bears his signature with a date of November 9, 2006.

. The Complaint erroneously listed the fourth count, against Disney, as “Count V,” and included a second Count V against Lane Wright, organizer of the Event. The count against Wright is not pertinent to this appeal.

. No transcript of the hearing appears in the record. It is unclear whether Peterson, or any attorney representing him, was present at the hearing. Neither the minutes of the hearing nor the orders granting summary judgment provide any findings of fact or conclusions of law to support granting summary judgment for Appellees.