950 So.2d 1280 (2007)
LAKE SUE DEVELOPMENT CO., INC., et al., Appellant,
v.
KEEWIN REAL PROPERTY COMPANY, Appellee.
No. 5D05-3808.
District Court of Appeal of Florida, Fifth District.
March 23, 2007.
*1281 Robert N. Reynolds, of Robert N. Reynolds, P.A., Winter Park, for Appellant.
David H. Simmons and Bart R. Valdes, of de Beaubien, Knight, Simmons, Mantzaris & Neal, LLP, Orlando, for Appellee.
MONACO, J.
Appellants, Lake Sue Development Company, Inc. ("Development Company"), and Commercial Realty Group ("Owner"), appeal the summary final judgment entered against them by the trial court and in favor of the appellee, Keewin Real Property Company ("Broker"). Because a number of issues of material fact were still in controversy, we conclude that the trial court erred in entering the summary judgment, and reverse.
On February 28, 2000, Development Company, entered into three contracts with Owner for the purchase of real estate located in Seminole County. Neill O'Brien, III, is the president and sole shareholder of Owner, and the president and majority shareholder of Development Company, the other shareholders being his wife, daughter and son. Development Company had planned either to develop the property itself, or to sell it to third parties.
Three days after execution of the contract for purchase and sale Development Company and Broker entered into an Exclusive Right of Sale Agreement, in accordance with which Broker would for a fixed term of six months, unless extended, act as the sole broker for Development Company in the sale of the subject real property. The Agreement seemed to contemplate that Development Company would close on the three contracts after it obtained certain governmental approvals and financing. As it turns out, however, Development Company never took title to the land. In the mean time, Broker attempted to find a buyer for the property, but was unable to locate any within the six month express term of the Exclusive Right of Sale Agreement.
In October of 2000, about seven months after entering the Exclusive Right of Sale Agreement, Broker introduced the property to Cambridge Homes, Ltd., and Cambridge and Development Company entered into a contract for the purchase and sale of 141 of the 408 residential lots on the subject land. In addition, Broker secured a letter of intent from Ryland Homes to buy another 141 of the homes, but this contract was rejected. In June of 2001, well after the original six-month term of the Exclusive Right of Sale Agreement, however, Owner sold the entire property to Maronda Homes for $6,218,300, and paid a full commission to another broker. Development Company then assigned the Cambridge contract to Maronda Homes, but Cambridge promptly cancelled its contract. At the time Broker made no claim to a commission for the sale to Maronda, although Mr. O'Brien apparently advised Broker that Owner had sold the land.
In this same general time period the Broker ceased its efforts to market the property. Mr. Folk, a principal of Broker, testified at deposition in this connection:
Q: When did you stop doing anything concerning marketing the property?

*1282 A: Probably when Neill, on, did not sign the contract with Ryland, which was I think December, January, and he had discussions with us that he could notwas not probably going to get financing not going to go through with the deal. We probably stopped working.
Q: December 2000, January 2001?
A: 2000. Yeah, 2000. The contract with Ryland was done October, November, December, January, then it was never signed.
. . .
A: [Mr. O'Brien] had discussions with us that he could notwas not probably going to get financing, not going to [sic] through with the deal. We probably stopped working.
Broker brought suit against Development Company and eventually against Owner seeking to recover against each for breach of contract for a broker's commission arising out of the Exclusive Right of Sale Agreement, or alternatively, for quantum meruit.[1] Broker's theory is basically that Development Company and Owner are "related corporations," and that each breached the Exclusive Right of Sale Agreement by failing to pay Broker a commission when the property was sold to Maronda Homes.
After several years of pleading modifications and discovery, Broker filed a motion for summary judgment.[2] The trial court eventually rendered a summary final judgment in favor of the Broker and against both of the appellants. The Owner and Development Company principally defended against summary judgment, as they had in their pleadings, by asserting that the Exclusive Right of Sale Agreement had expired and had never been renewed or extended. In addition, they argued that Broker was not entitled to a commission because it had abandoned work on the listing agreement. The trial court, however, concluded that the Agreement "was extended, and Defendants did not present any evidence to the contrary."[3] Accordingly, it found that the Agreement, lengthened beyond its original six-month term, was in effect at the time that the property was sold to Maronda Homes. Additionally, the trial court agreed that Owner and Development Company are related corporations in accordance with the holding of this court in Dawson v. Hadden, 743 So.2d 1230 (Fla. 5th DCA 1999), review denied, 766 So.2d 220 (Fla. 2000).
A ruling on a motion for summary judgment is subject to a de novo standard of review. See, e.g., Fla. Bar v. Greene, 926 So.2d 1195, 1200 (Fla. 2006). Given the evidence before the trial court at the time, and the evidence that we review de novo, *1283 we conclude that summary judgment was inappropriate because of a conflict in the material facts.
The Exclusive Right of Sale Agreement between the Broker and the Development Company gave the Broker the exclusive right to sell the property, and provides that "[a]ny sale by Developer during the term hereof, shall be deemed a sale wherein BROKER were (sic.) the procuring cause." The original term of the Agreement was for six months, but it allowed for an extension of the term, as follows: "Upon mutual agreement, this Agreement may also be extended beyond the Initial Term for whatever time period agreed upon between the DEVELOPER and BROKER." Unquestionably, the sale from Owner to Maronda Homes took place more than fifteen months after the effective date of the Exclusive Right of Sale Agreement. The question, then, is whether there was any issue of material fact with respect to an extension of the term of the Agreement.
The evidence adduced reflects that there was no explicit written extension of the term of the Agreement. Broker contends, however, that the parties orally agreed to extend the contract for however long it took to sell the property. Jay Folk, the president of the Broker, testified at deposition concerning his assertion of a verbal extension, as follows:
Folk: Well, we continued to work on the property, and Neill says continue working on the property. It says, upon mutual agreement, this agreement may also be extended beyond initial term for whatever time period agreed upon by the developer and broker. The mutual agreement was we were continuing to work on it.
. . .
Q: What time period was agreed upon between the developer and broker for the extension?
Folk: To continue working on the property until it's sold.
. . .
Well, we had an exclusive right of sale which I agreed with two people involved in this, Keewin and Lake Sue Development. Lake Sue Development said continue working with the property. We continued to work with the property. I mean, earlier, you asked me when the six month was up and then you asked me to go through my notes, Although it was up in August [2000], we went through September and October. You said stop there. We continued to work on the property. That's evidence at the time Neill would have said exclusive is up, don't do any more work but we continued to work. Neill didn't say don't stop or I'm not going to go on in this or I'm not going to do that. We continued to work on the property. It was mutually extended.
According to Mr. Folk, an August 17, 2001, letter from Mr. O'Brien to the principals of the Broker, referring to Broker as "my broker" was consistent with verbal discussions to extend the Exclusive Right of Sale Agreement indefinitely. The letter in its entirety reads as follows:
Dear Allan and Jay:
Today I received a copy of the enclosed Termination of Contract for Sale and Purchase between Cambridge Homes, Ltd. and Maronda Homes, Inc.
The intent of this letter is to notify you as my Broker that I have received this document. According to our Exclusive Right of Sale Agreement, Paragraph 4 may give you specific rights regarding the earnest money deposit which Cambridge is asking to be returned to them.

*1284 Please let this letter serve as my notice to you of their actions.
(Emphasis supplied).
Mr. O'Brien submitted an affidavit in response to the motion for summary judgment stating that the Development Company did not extend the Agreement. In his affidavit he asserted that the Agreement expired before he began discussions with Maronda, and that the August 2001 letter referred to Broker as his broker with respect to the Cambridge transaction. He noted that he had simply addressed the possibility that Broker was entitled to some of the money deposited on the contract by Cambridge. Mr. O'Brien also stated that a course of conduct had been established between Keewin and Development Company for an extension of an agreement that would be memorialized in writing, as evidenced by certain letters attached to Mr. O'Brien's affidavit. In those letters, Broker made a formal written request for an extension of the period of time which it had to inspect the property, after the principals had verbally discussed the matter. Mr. O'Brien responded with a written grant of the Broker's request. Mr. O'Brien admitted in his deposition, however, that he did not have any documentation to dispute Mr. Folk's claim that the listing agreement had been extended by oral agreement. Thus, the allegation from the Broker's perspective was that the contract had been orally extended, while the evidence from the Development Company and Owner was that it had not.
Although it never moved to strike the affidavit, Broker claims that the affidavit should be disregarded because the key points of it are contradicted by the earlier deposition testimony of Mr. O'Brien. See, e.g., Inman v. Club on Sailboat Key, Inc., 342 So.2d 1069 (Fla. 3d DCA 1977). A comparison of the deposition and affidavit, however, reflects that they are not at odds with each other. Accordingly, the language of the affidavit must be given effect.
Summary judgment is only appropriate if there is no genuine issue of material fact, and if the moving party is entitled to a judgment as a matter of law. Fla. R. Civ. P. 1.510(c). In St. Joe Corp. v. McIver, 875 So.2d 375 (Fla. 2004), the Florida Supreme Court held that "generally, where the parties acknowledge creation of a contract and the disagreement concerns their varying understandings about certain terms, such questions are properly submitted to a jury." The St. Joe court recognized that while parties could discharge or modify portions of a written contract between them, whether such a modification is valid is generally a question of fact. Id. at 382. In addition, while subsequent conduct can likewise modify the terms of a contract, whether such conduct does in fact result in a modification is also a question of fact. Id. at 382-383. See also Rotemi Realty, Inc. v. Act Realty Co., Inc., 911 So.2d 1181 (Fla. 2005).
It hardly bears repeating that "[a]ll doubts regarding the existence of an issue in a motion for summary judgment are resolved against the moving party, and all evidence before the court plus favorable inferences reasonably justified thereby are to be liberally construed in favor of the opponent." See Aagaard-Juergensen, Inc. v. Lettelier, 540 So.2d 224, 225 (Fla. 5th DCA 1989). Here, the question is whether the explicit term of the Exclusive Right of Sale Agreement has been modified and extended either orally or by the subsequent conduct of the parties. The issue is laden with contradictory evidence that can in this case only be resolved by a trier of fact. We conclude, therefore, that summary judgment was inappropriate.
We conclude, as well, that the issue of whether Broker abandoned the Exclusive Right of Sale Agreement was not one that *1285 could be resolved by summary judgment because the facts surrounding it were not crystallized at the time the judgment was rendered. Thus, the trial court likewise erred in this regard.[4]
We, therefore, reverse and remand this case to the trial court for further proceedings consistent with this opinion.
REVERSED and REMANDED.
PALMER and TORPY, JJ., concur.
NOTES
[1] A counterclaim by the Development Company was also decided by summary judgment in favor of the Broker, but this appeal does not address that matter.
[2] We recognize that there were a number of fits and starts associated with the summary judgment that was finally rendered. We are omitting this unnecessary detail for the sake of clarity.
[3] We note that a nonmoving party is not required to make any showing in support of its position until the moving party has, by affidavit or otherwise, completely negated all allegations and inferences raised by the nonmoving party. See Holl v. Talcott, 191 So.2d 40, 43 (Fla. 1966); Berenson v. Southern Baptist Hosp. of Fla., Inc., 646 So.2d 809, 810 (Fla. 1st DCA 1994); Pennco, Inc. v. American Gen. Home Equity, Inc., 629 So.2d 307 (Fla. 2d DCA 1993). The nonmoving party is not bound to come forward with any evidence or inferences until the proponent of the motion has met its high burden. This proponent's burden is to show that the nonmoving party cannot prevail. See Berenson; Gomes v. Stevens, 548 So.2d 1163 (Fla. 2d DCA 1989).
[4] Because it appears that this case will be headed for trial we observe for the benefit of the trial judge and parties that we find no merit in the contention of the Development Company and Owner that Broker breached its fiduciary duty by making an offer on the property.