# Supreme Court of Florida

_____

No. SC12-2409
_____

**STACY SANISLO, et al.,**
Petitioners,

vs.

**GIVE KIDS THE WORLD, INC.,**
Respondent.

[February 12, 2015]

PER CURIAM.

This case is before the Court for review of the decision of the Fifth District Court of Appeal in Give Kids the World, Inc. v. Sanislo, 98 So. 3d 759 (Fla. 5th DCA 2012), in which the Fifth District held that an exculpatory clause was effective to bar a negligence action despite the absence of express language referring to release of the defendant for its own negligence or negligent acts. The district court certified that its decision is in direct conflict with the decisions of the First, Second, Third, and Fourth District Courts of Appeal in Levine v. A. Madley Corp., 516 So. 2d 1101 (Fla. 1st DCA 1987); Van Tuyn v. Zurich Am. Ins. Co., 447 So. 2d 318 (Fla. 4th DCA 1984); Goyings v. Jack & Ruth Eckerd Found., 403

So. 2d 1144 (Fla. 2d DCA 1981); and <u>Tout v. Hartford Accident & Indem. Co.</u>, 390 So. 2d 155 (Fla. 3d DCA 1980). We have jurisdiction. <u>See</u> art. V, § 3(b)(4), Fla. Const. For the following reasons, we approve the Fifth District's decision in <u>Give Kids the World</u> and disapprove the decisions of the First, Second, Third, and Fourth District Courts of Appeal.

**FACTS AND PROCEDURAL HISTORY**

This action arose as a result of a negligence action brought against Give Kids the World, Inc., (Give Kids the World), a non-profit organization that provides free "storybook" vacations to seriously ill children and their families at its resort village,[1] by Stacy and Eric Sanislo, a married couple who brought their seriously ill child to the village, for injuries sustained by Ms. Sanislo while on the vacation.

As part of the application process for the "storybook" vacation, the Sanislos filled out and signed a wish request form, which contained language releasing Give Kids the World from any liability for any potential cause of action. After the wish was granted, the Sanislos arrived at the resort village located in Kissimmee, Florida, and again signed a liability release form. The wish request form and liability release form both provide, in pertinent part:

---

1. Fulfillment of a child's wish is accomplished in conjunction with the Make-A-Wish Foundation. <u>See</u> <u>Give Kids the World</u>, 98 So. 3d at 760 n.1.

- 2 -

I/we hereby release Give Kids the World, Inc. and all of its agents, officers, directors, servants, and employees from any liability whatsoever in connection with the preparation, execution, and fulfillment of said wish, on behalf of ourselves, the above named wish child and all other participants. The scope of this release shall include, but not be limited to, damages or losses or injuries encountered in connection with transportation, food, lodging, medical concerns (physical and emotional), entertainment, photographs and physical injury of any kind. . . .

I/we further agree to hold harmless and to release Give Kids the World, Inc. from and against any and all claims and causes of action of every kind arising from any and all physical or emotional injuries and/or damages which may happen to me/us. . . .

While at the resort village, the Sanislos and their children participated in the horse-drawn wagon ride operated by Heavenly Hoofs, Inc. The wagon, manufactured by codefendant Thornlea Carriages, Inc., was equipped with a rear, pneumatic lift to allow those in wheelchairs to participate in the ride. The carriage was carrying the Sanislos' children. The Sanislos stepped onto the wheelchair lift of the wagon to pose for a picture and the lift collapsed due to weight overload, causing injuries to Ms. Sanislo's left hip and lower back.

The Sanislos subsequently brought suit in the circuit court for Osceola County against Give Kids the World alleging Ms. Sanislo's injuries were caused by Give Kids the World's negligence. See id. at 761. Give Kids the World asserted an affirmative defense of release, and filed a motion for summary judgment arguing that the Sanislos signed releases that precluded an action for negligence. Id. The Sanislos also filed a motion for partial summary judgment on

- 3 -

Give Kids the World's affirmative defense of release. The trial court granted the Sanislos' motion for summary judgment and denied Give Kids the World's motion for summary judgment. Thus, the negligence action proceeded to trial. Following a jury verdict, judgment was entered in the Sanislos' favor awarding them $55,443.43 for damages incurred as a result of the injury and costs of $16,448.61.

On appeal to the Fifth District, Give Kids the World argued that the lower court erred by denying its pretrial motion for summary judgment on its affirmative defense of release because the release was unambiguous and did not contravene public policy. The Fifth District reversed the trial court's denial of summary judgment, holding that an exculpatory clause releasing Give Kids the World from liability for "any and all claims and causes of action of every kind arising from any and all physical or emotional injuries and/or damages which may happen to me/us" barred the negligence action despite the lack of a specific reference to "negligence" or "negligent acts" in the exculpatory clause. Id. at 761-62. The Fifth District reasoned that exculpatory clauses are effective if the wording of the exculpatory clause is clear and understandable so that an ordinary and knowledgeable person would know what he or she is contracting away, and that the court had previously rejected " 'the need for express language referring to release of the defendant for "negligence" or "negligent acts" in order to render a release effective to bar a negligence action.' " Id. at 761 (quoting Cain v. Banka, 932 So. 2d 575, 578 (Fla.

5th DCA 2006)). The Fifth District also held that the bargaining power of the parties should not be considered because it was outside of the public utility or public function context and the Sanislos were not required to request a vacation with Give Kids the World or go on the vacation.

In Levine, Van Tuyn, Goyings, and Tout, the remaining four district courts of appeal held that exculpatory clauses are ineffective to bar a negligence action unless there is express language referring to release of the defendant for its own negligence or negligent acts. Accordingly, the conflict presented for this Court's resolution is whether an exculpatory clause is ambiguous and thus ineffective to bar a negligence action due to the absence of express language releasing a party from its own negligence or negligent acts.

The Sanislos argue that express language regarding negligence is necessary to render an exculpatory clause effective to bar an action for negligence because this Court has held that indemnification agreements, which are similar in nature to an exculpatory clause, require a specific provision protecting the indemnitee for its own negligence in order to be effective. Further, the Sanislos argue that an ordinary and knowledgeable person does not expect a release to relieve a party from liability for failure to provide reasonable care; thus, any document intending to do so must include specific, unambiguous language to that effect. Give Kids the World, however, argues that use of the term "negligence" should not be required

because: (1) the term "liability" is more readily understandable than "negligence" to an ordinary and knowledgeable person; (2) the language of this exculpatory clause would be rendered meaningless if found ineffective; (3) indemnification agreements and exculpatory clauses serve different purposes and involve differing allocations of risks; and (4) this rule has been rejected by many states. For the reasons discussed below, we hold that an exculpatory clause is not ambiguous and, therefore, ineffective simply because it does not contain express language releasing a defendant from liability for his or her own negligence or negligent acts; such an approach could render similar provisions meaningless and fail to effectuate the intent of the parties.

## ANALYSIS

The issue presented—the enforceability of a pre-injury exculpatory clause that does not contain express language releasing a party of liability for its own negligence or negligent acts—is a question of law arising from undisputed facts. Thus, the standard of review is de novo. See Kirton v. Fields, 997 So. 2d 349, 352 (Fla. 2008) (citing D'Angelo v. Fitzmaurice, 863 So. 2d 311, 314 (Fla. 2003) (stating that the standard of review for pure questions of law is de novo and no deference is given to the judgment of the lower courts)).

Public policy disfavors exculpatory contracts because they relieve one party of the obligation to use due care and shift the risk of injury to the party who is

probably least equipped to take the necessary precautions to avoid injury and bear the risk of loss.  Applegate v. Cable Water Ski, L.C., 974 So. 2d 1112, 1114 (Fla. 5th DCA 2008) (citing Cain, 932 So. 2d at 578); see Levine, 516 So. 2d at 1103 ("The rule is that an exculpatory clause may operate to absolve a defendant from liability arising out of his own negligent acts, although such clauses are not favored by the courts."); Goyings, 403 So. 2d at 1146 (same).  Nevertheless, because of a countervailing policy that favors the enforcement of contracts, as a general proposition, unambiguous exculpatory contracts are enforceable unless they contravene public policy.  Applegate, 974 So. 2d at 1114 (citing Cain, 932 So. 2d at 578); Ivey Plants, Inc. v. FMC Corp., 282 So. 2d 205, 208 (Fla. 4th DCA 1973); Restatement (Second) of Torts § 496B (1965).  Exculpatory clauses are unambiguous and enforceable where the intention to be relieved from liability was made clear and unequivocal and the wording was so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away.  Cain, 932 So. 2d at 578 (citing Gayon v. Bally's Total Fitness Corp., 802 So. 2d 420, 420-21 (Fla. 3d DCA 2001)); Raveson v. Walt Disney World Co., 793 So. 2d 1171, 1173 (Fla. 5th DCA 2001); cf. Univ. Plaza Shopping Ctr., Inc. v. Stewart, 272 So. 2d 507, 509 (Fla. 1973) (" 'A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own

negligent acts unless such intention is expressed in clear and unequivocal terms. . . .' ").

The liability release forms signed in this case provided that the Sanislos released Give Kids the World from "any liability whatsoever in connection with the preparation, execution, and fulfillment of said wish . . ." and "any and all claims and causes of action of every kind arising from any and all physical or emotional injuries and/or damages which may happen to me/us. . . ." Further, the form states that the scope of the release includes "damages or losses or injuries encountered in connection with transportation, food, lodging, medical concerns (physical and emotional), entertainment, photographs and physical injury of any kind." Although this exculpatory clause otherwise clearly and unequivocally includes negligence as its express terms encompass any liability, any and all claims and causes of action, and damages or losses or injuries encountered on the vacation, the issue before this Court is whether an exculpatory clause's terms "clearly and unequivocally" release a party of liability for its own negligence or negligent acts when the clause does not contain express language regarding negligence or negligent acts.[2]

---

2. The Sanislos do not argue that the exculpatory clause here is void because it is against public policy. This claim is barred. Hoskins v. State, 75 So. 3d 250, 257 (Fla. 2011) (noting that an argument not raised in the initial brief is barred).

As noted above, in <u>Give Kids the World</u>, the Fifth District reaffirmed its position that exculpatory clauses are not ambiguous, equivocal, and unenforceable to bar negligence actions simply because they do not contain express language referring to release of the defendant for negligence or negligent acts.  <u>Id.</u> at 761. The First, Second, Third, and Fourth Districts, however, relying on this Court's holding in <u>University Plaza</u> regarding indemnity agreements, have held that an exculpatory clause is only effective to bar a negligence action if it clearly states that it releases a party from liability for his or her own negligence.  <u>Levine</u>, 516 So. 2d at 1103; <u>Van Tuyn</u>, 447 So. 2d at 320; <u>Goyings</u>, 403 So. 2d at 1146 (reasoning that "This duty to undertake reasonable care expressed in the first part of the provision would be rendered meaningless if the exculpatory clause absolved appellees from liability."); and <u>Tout</u>, 390 So. 2d at 156 (citing <u>Ivey Plants</u>, 282 So. at 209 (relying on <u>University Plaza</u> to conclude that the language in the indemnification agreement did not preclude maintenance of an action predicated on the alleged negligence of the defendant)).

Here, both parties argue the merits of extending the holding stated in <u>University Plaza</u> in the context of indemnity agreements to exculpatory clauses and hold-harmless agreements.  The Sanislos contend that indemnity agreements and exculpatory clauses achieve the same result—abdication of responsibility for one's own negligence—and therefore, should be treated the same.  Give Kids the World,

on the other hand, contends that it is sensible to require specificity in indemnity agreements because both parties to the contract can conceivably cause injury to an unknown third party, whereas exculpatory clauses shift the risk of injury and liability from one contracting party—usually a purveyor of voluntary amusements or a non-profit service provider—to the other contracting party, a voluntary consumer of the amusement or service. To determine whether the holding in University Plaza should be applied in this context, we examine University Plaza and its progeny, and out of state case law.

University Plaza

In University Plaza, University Plaza Shopping Center leased space in its building to a tenant who used the space to operate a barbershop. During the lease, a gas line exploded underneath the barbershop causing fatal injuries to a barber. The barber's widow sued University Plaza Shopping Center for wrongful death alleging that the landlord negligently installed and maintained the gas line under the barbershop, which caused the explosion that led to the barber's fatal injuries. University Plaza Shopping Center then instituted a third-party complaint against the tenant and his insurer seeking to impose liability on them based on an indemnity provision, which provided in pertinent part that the tenant would indemnify and save harmless the landlord from and against any and all claims for damages in and about the demised premises, and against any and all claims for

- 10 -

personal injury or loss of life in and about the demised premises. Univ. Plaza, 272 So. 2d at 508-09. University Plaza Shopping Center conceded that the gas line was under, but not part of, the leased premises. Thus, the trial court entered a summary judgment for the tenant finding that an indemnity agreement stated in general terms does not apply to liability resulting from the sole negligence of the indemnitee. Further, the trial court found that the policy of insurance procured by the tenant was only applicable when the tenant was liable, and the tenant was free from liability for the gas line explosion. On appeal, the First District affirmed. This Court accepted certiorari review based on a decisional conflict because the Third District, in Thomas Awning & Tent Co., Inc. v. Toby's Twelfth Cafeteria, Inc., 204 So. 2d 756 (Fla. 3d DCA 1967), held that indemnification for "any loss or claims" encompasses the indemnitee's negligence.

The central issue in University Plaza was whether a contract of indemnity stated in general terms of "any and all claims" indemnifies the indemnitee for damages resulting from his sole negligence. Univ. Plaza, 272 So. 2d at 509. This Court noted that "divergent views" on the particular issue existed throughout the United States, but that the basic premise was that an indemnity contract does not indemnify the indemnitee against losses resulting from the indemnitee's negligent acts unless such intention is expressed in clear and unequivocal terms. Id. The Court observed that the divergence in views across the country turned on an

- 11 -

interpretation of the words "clear and unequivocal" and that three approaches existed: (1) the contract must contain a specific provision providing for indemnification in the event the indemnitee is negligent; (2) promises to indemnify against "any and all claims" include losses attributed solely to the negligence of the indemnitee because "all" means "all without exception"; and (3) the express use of the terms "negligence" or "negligent acts" is not required if the contractual language and any other factors indicate the intention to clearly and unequivocally indemnify for the indemnitee's own negligence. Id. at 509-10.

In concluding that the best alternative was to require a specific provision protecting the indemnitee from liability solely caused by his own negligence,[3] this Court reasoned that its "basic objective in construing the indemnity provision is to give effect to the intent of the parties involved. . ." and that "the use of the general terms 'indemnify . . . against any and all claims' does not disclose an intention to indemnify for consequences arising solely from the negligence of the indemnitee." Id. at 511 (emphasis omitted). The Court further reasoned that in the context

---

3. This Court did not follow the United States Supreme Court's decision in United States v. Seckinger, 397 U.S. 203, 212 n.17 (1970), in which the Supreme Court declined to hold that language in indemnification agreements needed to explicitly state that the indemnification extended to injuries caused by the indemnitee's own negligence, and recognized that contract interpretation is largely an individualized process "with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention."

presented, "the phraseology logically relates to the tenant's occupation of the leased premises—not some outside (though proximately close) independent act of negligence of the landlord. . . . It might be likened to a 'common stairway' in an apartment complex. . . . One would not expect liability to extend under a shopowner's policy for a landlord's negligently maintained common walkway or mall in front of a series of shops." Id. at 512 (emphasis omitted). Finally, we concluded our reasoning by stating that the other alternatives listed above impute an intent to indemnify for liability occasioned by the indemnitee's sole negligence, which is a "harsh result not necessarily contemplated by the parties nor condoned by this Court." Id. Six years later, we considered whether this rule applied to situations where the indemnitee was jointly liable due to his or her own negligence in Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So. 2d 487, 489 (Fla. 1979).

Charles Poe Masonry

In Charles Poe Masonry, an employee of Charles Poe Masonry was injured when he fell from a scaffold on a construction site. The employee filed an action alleging the manufacturer of the scaffold, Spring Lock, was negligent, breached the implied warranty, and was strictly liable for his injuries. The scaffold had been leased by Spring Lock to Charles Poe Masonry. The lease agreement provided in pertinent part that the lessee assumed all responsibility for claims asserted by any

- 13 -

person whatsoever growing out of the erection and maintenance, use, or possession of the scaffolding equipment, and that the lessee agreed to hold the lessor harmless from such claims. Id. at 489. Thus, Spring Lock filed a third-party complaint against Charles Poe Masonry for contractual indemnity.[4] Id. at 488.

In considering whether the provision barred a negligence action, we found that the provision at issue was "exactly the sort of 'general terms' which we held in University Plaza do not disclose an intention to indemnify for consequences arising from the wrongful acts of the indemnitee" and that the public policy reasons expressed in University Plaza applied with equal force to instances where the indemnitor and indemnitee were jointly liable. Id. at 489-90 ("Under classical principles of indemnity, courts of law rightfully frown upon the underwriting of wrongful conduct, whether it stands alone or is accompanied by other wrongful acts."). Further, we reasoned that the language of the provision demonstrated "nothing more than an undertaking by [Charles Poe Masonry] to hold Spring Lock harmless from any vicarious liability which might result from [Charles Poe Masonry's] erection, maintenance or use of the scaffold." Id. at 489.

---

4. Spring Lock also filed the third-party complaint against Charles Poe Masonry for common law indemnity, which this Court held was unavailable for the reasons expressed in Houdaille Industries, Inc. v. Edwards, 374 So. 2d 490 (Fla. 1979).

We reaffirmed these principles thirteen years later in <u>Cox Cable Corp. v. Gulf Power Co.</u>, 591 So. 2d 627 (Fla. 1992).

<u>Cox Cable</u>

In <u>Cox Cable</u>, Cox Cable Corporation and Gulf Power Company entered into a written contract authorizing Cox Cable to attach its cables, wires, and appliances to Gulf Power's utility poles.  The contract also provided that Cox Cable was to ensure the safe installation and maintenance of any wires, cables, or devices attached to the poles and indemnify Gulf Power against claims for personal injury and property damages.  Cox Cable hired a cable installation contractor to perform the installation, and the cable installation contractor's employee suffered electrical burns when he overtightened a guy wire during the course of installation.  This employee sued Gulf Power alleging that its failure to warn him of the danger was negligent.  Gulf Power then filed a third-party complaint against Cox Cable seeking indemnification.[5]  <u>Id.</u> at 628-29.  The indemnity agreement provided in pertinent part that the licensee was to indemnify and save the licensor forever harmless against any and all claims and demands for damages to property and injury or death to any persons including, but not restricted to, employees of the licensee and employees of any contractor or subcontractor performing work for the

_____

5.  Gulf Power also claimed breach of contract and alleged that Cox Cable's negligence was the sole and proximate cause of the employee's injuries.

licensee which may arise out of or be caused by the erection, maintenance, presence, use or removal of the aforementioned attachments. Id. at 629.

On appeal, the district court stated that the degree of specificity required for indemnification in cases of joint negligence was less stringent than in cases where the indemnitee is solely negligent. This Court, however, reaffirmed the principles established in University Plaza and Charles Poe Masonry in holding that the district court had erred by applying a less stringent standard to cases involving parties who are jointly liable, and that the language of the provision before it was insufficiently clear and unequivocal. Accordingly, it is clear that since 1973 and as recently as 1992, this Court has found that an indemnity agreement only indemnifies the indemnitee for his or her own negligence or negligent acts if the agreement contains a specific provision protecting the indemnitee from liability caused by his or her own negligence.

The principles underlying our case law regarding indemnity agreements, however, are not applicable to exculpatory clauses. Generally, "[i]ndemnification provides a party entitled to indemnification the right to claim reimbursement for its actual loss, damage, or liability from the responsible party. . . ." First Baptist Church of Cape Coral, Florida, Inc. v. Compass Constr., Inc., 115 So. 3d 978, 986 (Fla. 2013) (Lewis, J., dissenting) (emphasis added) (citing Black's Law Dictionary 837 (9th ed. 2009)); see also Dade Cnty. Sch. Bd. v. Radio Station

- 16 -

WQBA, 731 So. 2d 638, 643 (Fla. 1999) ("A contract for indemnity is an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party."). Further, "[i]ndemnification serves the purpose of holding the indemnified party harmless by shifting the entire loss or damage incurred by the indemnified party—who has without active negligence or fault 'been obligated to pay, because of some vicarious, constructive, derivative, or technical liability'—to the responsible party who should bear the cost because it was that party's wrongdoing for which the indemnified party is held liable." Compass Const., 115 So. 3d at 986 (Lewis, J., dissenting) (emphasis added); see also Rosati v. Vaillancourt, 848 So. 2d 467, 470 (Fla. 5th DCA 2003) ("Indemnity is a right which inures to one who discharges a duty owed by him but which, as between himself and another, should have been discharged by the other." (citing Houdaille Indust., Inc. v. Edwards, 374 So. 2d 490, 492-93 (Fla. 1979))). These contracts are typically negotiated at arm's length between sophisticated business entities and can be viewed as an effort to allocate the risk of liability. Gross v. Sweet, 400 N.E.2d 306, 310 (N.Y. 1979). Thus, it would not be apparent that a party has agreed to indemnify a party for liability incurred due to that party's own negligent conduct based on general language in an indemnification agreement.

An exculpatory clause, on the other hand, shifts the risk of injury and deprives one of the contracting parties of his or her right to recover damages

suffered due to the negligent act of the other contracting party.  See Ivey Plants, 282 So. 2d at 207.  Thus, although indemnification agreements can sometimes produce the same result as an exculpatory provision by shifting responsibility for the payment of damages back to the injured party, see O'Connell v. Walt Disney World Co., 413 So. 2d 444, 446 (Fla. 5th DCA 1982), Florida courts recognize a distinction between exculpatory clauses and indemnity clauses.[6]  Acosta v. Rentals (N. Am.), Inc., No. 8:12-CV-01530-EAK-TGW, 2013 WL 869520 (M.D. Fla. Mar. 7, 2013).

These distinctions are evidenced in this Court's precedent noted above.  In University Plaza and Charles Poe Masonry, this Court recognized that indemnification agreements are construed subject to the general rules of contract construction—the Court looks to the intentions of the parties.  See Dade Cnty. Sch. Bd., 731 So. 2d at 643 (noting that indemnity contracts are subject to the general rules of contractual construction).  Thus, given the typical purpose of indemnification, and that the parties' apparent intent was to reduce the risk of vicarious liability, we were reluctant to decipher an intent to indemnify a party for its own wrongdoing through the parties' use of general terms.  See Univ. Plaza,

---

6.  In Yang v. Voyagaire Houseboats, Inc., 701 N.W.2d 783, 792 n.6 (Minn. 2005), the court noted that although it had previously recognized similarities between exculpatory clauses and indemnity agreements, the "[i]ndemnification clauses are subject to greater scrutiny because they release negligent parties from liability, but also may shift liability to innocent parties."

- 18 -

272 So. 2d at 512 (noting that the language of the agreement appeared to relate to injuries occurring due to the tenant's occupation of the leased premises—liability would not logically extend to a landlord's negligently maintained common walkway); Charles Poe Masonry, 374 So. 2d at 489 (noting that the language of the lease agreement appeared to be an undertaking by the indemnitor to indemnify the indemnitee from any vicarious liability). Further, because courts "frown upon the underwriting of wrongful conduct. . . ," specificity is required in the indemnity context. See id. at 489-90 (holding that courts should not allow underwriting of wrongful conduct). In short, because indemnification agreements allocate the risk of liability for injuries to an unknown third party, specificity is required so that the indemnitor is well aware that it is accepting liability for both its negligence and the negligence of the indemnitee. Exculpatory clauses, however, primarily release a party from liability for its own negligence and not vicarious liability.[7] See Heil Valley Ranch, Inc. v. Simkin, 784 P.2d 781, 784-85 (Colo. 1989) (noting, in a release relieving a party from liability for any injuries due to horseback riding, that any claim the injured party could have asserted would have been based on negligence). Further, releasing a party from liability does not result in the underwriting of wrongful conduct or shift liability to an innocent party. Thus,

---

7. Indeed, the petitioner in this case could not indicate what this liability release form covered if not the negligence of Give Kids the World.

- 19 -

discerning the intent of the parties regarding the scope of an exculpatory clause involves less uncertainty than in an indemnification context. Accordingly, University Plaza and its progeny do not control our conclusion here.

Review of out-of-state precedent illustrates that many states have expressly rejected the requirement that an exculpatory clause contain an explicit provision releasing a party from liability for his or her own negligence or negligent acts.

### **Out-of-State Precedent**

State courts across the country have rendered four different standards for determining whether language in an exculpatory clause clearly and unequivocally releases a party from liability for negligence. 57A Am. Jur. 2d Negligence § 53 (2004). First, recognizing that "the intentions of the parties with regard to an exculpatory provision in a contract should be delineated with the greatest of particularity," an exculpatory clause will be given effect if the agreement clearly and unambiguously expresses the parties' intention to release a party from liability for his or her own negligence by using the words "negligence" or "negligent acts" and specifically including injuries definitely described as to time and place. 57A Am. Jur. 2d Negligence § 53 (citing Jones v. Dressel, 623 P.2d 370 (Colo. 1981); Wright v. Loon Mountain Recreation Corp., 663 A.2d 1340 (N.H. 1995)). Second, a specific reference to negligence is not required if the clause clearly and specifically indicates an intent to release the defendant from liability for a personal

- 20 -

injury caused by the defendant's negligence.  See 57A Am. Jur. 2d Negligence

§ 53 (citing Seigneur v. Nat'l Fitness Inst., Inc., 752 A.2d 631 (Md. Ct. Spec. App.

2000); Swartzentruber v. Wee-K Corp., 690 N.E.2d 941 (Ohio Ct. App. 1997);

Empress Health & Beauty Spa, Inc. v. Turner, 503 S.W.2d 188 (Tenn. 1973); Russ

v. Woodside Homes, Inc., 905 P.2d 901 (Utah Ct. App. 1995); Blide v. Rainier

Mountaineering, Inc., 636 P.2d 492 (Wash. Ct. App. 1981)).  Third, a specific

reference to negligence is not required if protection against negligence is the only

reasonable construction of the contract.  See, e.g., American Druggists' Ins. Co. v.

Equifax, Inc., 505 F. Supp. 66, 68-69 (S.D. Ohio 1980) (applying Ohio law).

Fourth, a specific reference to negligence is not required if the hazard experienced

was clearly within the contemplation of the provision.  See, e.g., Blide, 636 P.2d

493).  Courts, however, have required words conveying a similar import; a release

will not cover negligence if it neither specifically refers to negligence nor contains

any other language that could relate to negligence.  See 57A Am. Jur. 2d

Negligence § 53 (citing Lewis v. Snow Creek, Inc., 6 S.W.3d 388 (Mo. Ct. App.

1999) (retransferred to Mo. Ct. of Appeals (Dec. 21, 1999) and opinion adopted

and reinstated after retransfer (Jan. 6, 2000)); Sivaslian v. Rawlins, 451 N.Y.S.2d

307 (N.Y. App. Div. 1982); Colton v. New York Hospital, 414 N.Y.S.2d 866

(N.Y. Sup. Ct. 1979)).  According to American Jurisprudence, however, "the better

practice is to expressly state the word 'negligence' somewhere in the exculpatory

provision."[8]  57A Am. Jur. 2d Negligence § 53; see Give Kids the World, 98 So. 3d at 763 (Cohen, J., concurring specially) ("The better view is to require an explicit provision to that effect. . . .  I would suggest that the average ordinary and knowledgeable person would not understand from such language that they were absolving an entity from a duty to use reasonable care.").

Although some courts have suggested that "the better practice" for contracting parties is to require an explicit provision releasing a party from liability for his or her own negligence or negligent acts, most states have expressly rejected such a requirement.  For instance, the Supreme Court of Kentucky does not require the word "negligence," but reviews the contractual language to determine whether it satisfies any one of four standards articulated by the court.  Hargis v. Baize, 168 S.W.3d 36, 47 (Ky. 2005) (". . . a preinjury release will be upheld only if (1) it explicitly expresses an intention to exonerate by using the word 'negligence'; or (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the

---

8.  Although many courts have noted that it may be "better practice" to include the term "negligence" in contracts, our jurisprudence recognizes that the term "negligence" may not be understood by the average ordinary and knowledgeable person.  For instance, the legal term "negligence" is defined for juries.  See Fla. Std. Jury Instr. (Civ.) 401.4.  Thus, the inclusion of the terms "negligence" or "negligent acts" may not clarify the meaning of an exculpatory contract for the average ordinary and knowledgeable person at all.

hazard experienced was clearly within the contemplation of the provision."); see Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp., 238 S.W.3d 644, 649-50 (Ky. 2007) (finding that the wording of the release was "unmistakable" and that " 'the hazard experienced was clearly within the contemplation of the provision.' ").

The Colorado Supreme Court has "examined the actual language of the agreement for legal jargon, length and complication, and any likelihood of confusion or failure of a party to recognize the full extent of the release provisions. . ." and has "also made clear that the specific terms 'negligence' and 'breach of warranty' are not invariably required for an exculpatory agreement to shield a party from claims based on negligence and breach of warranty." Chadwick v. Colt Ross Outfitters, Inc., 100 P.3d 465, 467 (Colo. 2004) (citing Heil Valley Ranch, 784 P.2d at 785). Indeed, in Heil, the Colorado Supreme Court noted several factors supporting the enforceability of the exculpatory clause: (1) the agreement was written in terms free from legal jargon; (2) the clause was not inordinately long or complicated; (3) when the agreement was read to the injured party at a deposition she indicated that she understood it; (4) the release specifically addressed a risk that adequately described the circumstances of the injury; and (5) it was difficult to imagine any claims that the injured party could have asserted other than negligence. 748 P.2d at 785. However, in Wycoff v.

Grace Community Church of Assemblies of God, 251 P.3d 1260, 1265 (Colo. App. 2010), the court of appeals noted that in every Colorado Supreme Court case upholding an exculpatory clause, the clause "contained some reference to waiving personal injury claims based on the activity being engaged in." Thus, a release form that did not reference the relevant activity or that personal injury claims were specifically waived was unenforceable.

Other states have similarly held that reference to negligence is not required. The Supreme Court of Hawai'i has held that an exculpatory clause that did not include specific language pertaining to negligence was effective to bar simple negligence claims, but not gross negligence or willful misconduct. See Courbat v. Dahana Ranch, Inc., 141 P.3d 427, 439-40 (Haw. 2006). In Massachusetts, an exculpatory clause releasing a party from liability for "any and all liability, loss, damage, costs, claims and/or causes of action, including but not limited to all bodily injuries" occurring during a motorcycle safety course was deemed "unambiguous and comprehensive" despite the absence of language specifically mentioning negligence. Cormier v. Cent. Mass. Chapter of the Nat'l Safety Council, 620 N.E.2d 784, 785 (Mass. 1993).

The following states also hold that the word "negligence" is not required. See, e.g., Adloo v. H.T. Brown Real Estate, Inc., 686 A.2d 298, 304 (Md. 1996) ("To be sure, as the weight of authority makes clear . . . the exculpatory clause

need not contain or use the word 'negligence' or any other 'magic words.' ");

Cudnik v. William Beaumont Hosp., 525 N.W.2d 891, 894 n.3 (Mich. App. 1994) (holding exculpatory agreement executed by patient before receiving radiation therapy was void as against public policy, but noting that exculpatory clause was not void for ambiguity because it "quite clearly attempts to absolve defendant of all liability 'of every kind and character' arising out of the radiation therapy" despite no reference to negligence); Mayfair Fabrics v. Henley, 226 A.2d 602, 605 (N.J. 1967) ("But there are no required words of art and, whatever be the language used or the rule of construction applied, the true goal is still the ascertainment and effectuation of the intent of the parties."); Reed v. Univ. of N.D., 589 N.W.2d 880, 885-86 (N.D. 1999); Estey v. MacKenzie Eng'g Inc., 927 P.2d 86, 89 (Or. 1996) (noting that the Supreme Court of Oregon had previously upheld clauses releasing others from liability " 'from whatever cause arising,' " and " 'all liability, cost and expense,' " and declining "to hold that the word 'negligence' must expressly appear in order for an exculpatory or limitation of liability clause to be effective against a negligence claim"); Empress Health & Beauty Spa, Inc. v. Turner, 503 S.W.2d 188, 190 (Tenn. 1973); Russ v. Woodside Homes, Inc., 905 P.2d 901, 906 (Utah Ct. App. 1995); Fairchild Square Co. v. Green Mountain Bagel Bakery, Inc., 658 A.2d 31, 34 (Vt. 1995); Scott ex rel. Scott v. Pac. W. Mountain Resort, 834 P.2d 6, 9-10 (Wash. 1992) (en banc) (rejecting proposed requirement of "the word

'negligence' or language with similar import" and holding "[c]ourts should use common sense in interpreting purported releases, and the language 'hold harmless . . . from all claims' logically includes negligent conduct"); Murphy v. N. Am. River Runners, Inc., 412 S.E.2d 504, 511 (W. Va. 1991); Atkins v. Swimwest Family Fitness Ctr., 691 N.W.2d 334, 341 (Wis. 2005) (noting that "this court has never specifically required exculpatory clauses to include the word 'negligence,' " but has recognized that its inclusion would be "very helpful"); Schutkowski v. Carey, 725 P.2d 1057, 1061 (Wyo. 1986) (adopting a "common sense" approach "based on the clear intent of the parties rather than specific 'negligence' terminology" for interpreting exculpatory clauses); Sanchez v. Bally's Total Fitness Corp., 79 Cal. Rptr. 2d 902, 904 (Cal. Ct. App. 1998)[9] (noting that courts look to the intent of the parties and use of the term "negligence" is not dispositive); Neighborhood Assistance Corp. v. Dixon, 593 S.E.2d 717 (Ga. Ct. App. 2004); Finagin v. Ark. Dev. Fin. Auth., 139 S.W.3d 797 (Ark. 2003) (noting that courts are not restricted to the literal language of the contract and will consider the facts

_____

9. In Benedek v. PLC Santa Monica, LLC, 129 Cal. Rptr. 2d 197 (Cal. Ct. App. 2002), the injured party did not contend that the release is ineffective due to the ambiguity of the language. Thus, Division Five of the Second Appellate District did not address this issue. However, California law appears to provide that a release need not achieve perfection, but "must be clear, unambiguous, and explicit in expressing the intent of the subscribing parties."

and circumstances surrounding the execution of the release to determine the intent of the parties).[10]

Other jurisdictions, however, require express use of the terms "negligence" or "negligent acts."  See Sweeney v. City of Bettendorf, 762 N.W.2d 873, 878-79 (Iowa 2009) (requiring specific reference to exculpee's own negligence); McCune v. Myrtle Beach Indoor Shooting Range, Inc., 612 S.E.2d 462 (S.C. Ct. App. 2005); Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc., 694 N.E.2d 757, 761 (Ind. Ct. App. 1998); Morganteen v. Cowboy Adventures, Inc., 949 P.2d 552 (Ariz. Ct. App. 1997); Alack v. Vic Tanny Int'l of Mo., Inc., 923 S.W.2d 330, 337-38 (Mo. 1996) (holding that express language is required because "[o]ur traditional notions of justice are so fault-based that most people might not expect such a relationship to be altered, regardless of the length of an exculpatory clause, unless done so explicitly"); Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508-09 (Tex. 1993) (applying an "express negligence doctrine" because "indemnity agreements, releases, exculpatory agreements, or waivers, all operate to transfer risk" and such agreements are "an extraordinary shifting of

_____

10.  It is also evident that federal courts in circuits finding complete limitations on liability enforceable in maritime contracts hold that express reference to the terms "negligence" or "negligent acts" is not required.  See Cook v. Crazy Boat of Key West, Inc., 949 So. 2d 1202 (Fla. 3d DCA 2007) ("State laws requiring specific reference to the releasee's negligence therefore conflict with federal law and may not be applied in cases involving federal maritime law.").

- 27 -

risk"); <u>Macek v. Schooner's Inc.</u>, 586 N.E.2d 442 (Ill. App. Ct. 1991); <u>Kissick v. Schmierer</u>, 816 P.2d 188, 190-91 (Alaska 1991).[11]  The Supreme Court of Connecticut held that express language was required explaining that

> A person of ordinary intelligence reasonably could believe that, by signing this release, he or she was releasing the defendant only from liability for damages caused by dangers inherent in the activity of snowtubing.  A requirement of express language releasing the defendant from liability for its negligence prevents individuals from inadvertently relinquishing valuable legal rights.  Furthermore, the requirement that parties seeking to be released from liability for their negligence expressly so indicate does not impose on them any significant cost.

<u>Hyson v. White Water Mountain Resorts of Conn., Inc.</u>, 829 A.2d 827, 831 (Conn. 2003).  In New York, the Court of Appeals of New York held that in order for a party to shed its ordinary responsibility of due care, express use of the terms "negligence," "negligent acts," or words conveying a similar import are required because although parties may be alerted to dangers inherent in dangerous activities, "it does not follow that [parties are] aware of, much less intended to accept, any <u>enhanced</u> exposure to injury occasioned by the carelessness of the very persons on which [the parties] depend[] for [his or her] safety. . . .  Thus, whether on a running reading or a careful analysis, the agreement could most reasonably be taken merely

---

11.  In Alaska, however, indemnification agreements do not require specific words regarding indemnity for the indemnitee's own negligence.  <u>Kissick</u>, 816 P.2d at 192 (Compton, J., dissenting) (citing <u>Manson-Osberg Co. v. State</u>, 552 P.2d 654, 659 (Alaska 1976)).

as driving home the fact that the defendant was not to bear any responsibility for injuries that ordinarily and inevitably would occur, without any fault of the defendant." Gross, 400 N.E.2d at 309-11.

Although we agree that it may be better practice to expressly refer to "negligence" or "negligent acts" in an exculpatory clause, we find that the reasoning employed by the states that do not require an express reference to render an exculpatory clause effective to bar a negligence action is more persuasive, particularly in the context presented here. As discussed above, the courts' basic objective in interpreting a contract is to give effect to the parties' intent. Further, as the United States Supreme Court has observed, contract interpretation is largely an individualized process "with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." United States v. Seckinger, 397 U.S. 203, 212 n.17 (1970). As a result, we are reluctant to hold that all exculpatory clauses that are devoid of the terms "negligence" or "negligent acts" are ineffective to bar a negligence action despite otherwise clear and unambiguous language indicating an intent to be relieved from liability in such circumstances. Application of such a bright-line and rigid rule

would tend to not effectuate the intent of the parties and render such contracts otherwise meaningless.[12] The contract at issue demonstrates as much.

The wish request form and liability release form signed by the Sanislos released Give Kids the World and all of its agents, officers, directors, servants, and employees from "any liability whatsoever in connection with the preparation, execution, and fulfillment of said wish. . . ." The language of the agreement then provided that the scope of the agreement included "damages or losses or injuries encountered in connection with transportation, food, lodging, medical concerns (physical and emotional), entertainment, photographs and physical injury of any kind. . . ." This agreement clearly conveys that Give Kids the World would be released from any liability, including negligence, for damages, losses, or injuries due to transportation, food, lodging, entertainment, and photographs. With regard to Give Kids the World and the wish fulfilled for the Sanislos, it is unclear what

12. In a concurring opinion in Florida Department of Financial Services v. Freeman, Justice Cantero referred to several Florida Supreme Court cases discussing the freedom of contract and noted that this Court had previously recognized that " 'while there is no such thing as an absolute freedom of contract, nevertheless, freedom is the general rule and restraint is the exception.' " 921 So. 2d 598, 607 (Cantero, J., concurring) (quoting Larson v. Lesser, 106 So. 2d 188, 191 (Fla. 1958)). Further, Justice Cantero noted that "[t]his freedom . . . 'includes freedom to make a bad bargain.' " Id. at 607 (quoting Posner v. Posner, 257 So. 2d 530, 535 (Fla. 1972)). Finally, Justice Cantero acknowledged that courts may not " 'rewrite contracts or interfere with freedom of contracts or substitute [their] judgment for that of the parties to the contract in order to relieve one of the parties from apparent hardships of an improvident bargain.' " Id. at 607 (quoting Quinerly v. Dundee Corp., 31 So. 2d 533, 534 (Fla. 1947)).

this agreement would cover if not the negligence of Give Kids the World and its agents, officers, directors, servants, and employees, given that exculpatory clauses are unenforceable to release a party of liability for an intentional tort. See Loewe v. Seagate Homes, Inc., 987 So. 2d 758, 760 (Fla. 5th DCA 2008) (citing Kellums v. Freight Sales Ctrs., Inc., 467 So. 2d 816 (Fla. 5th DCA 1985), and L. Luria & Son, Inc. v. Honeywell, Inc., 460 So. 2d 521 (Fla. 4th DCA 1984)). Further, this agreement specifically operates to release Give Kids the World in connection with circumstances that are not inherently dangerous. Thus, this is not a situation where a person of ordinary intelligence would believe that the release "could most reasonably be taken merely as driving home the fact that the defendant was not to bear any responsibility for injuries that ordinarily and inevitably would occur, without any fault of the defendant." Cf. Gross, 400 N.E.2d at 309-10; Hyson, 829 A.2d at 831 (requiring the use of the word "negligence" in a release pertaining to snowtubing). Accordingly, this agreement would be rendered meaningless if it is deemed ineffective to bar a negligence action solely on the basis of the absence of the legal terms of art "negligence" or "negligent acts" from the otherwise clear and unequivocal language in the agreement.

Despite our conclusion, however, we stress that our holding is not intended to render general language in a release of liability per se effective to bar negligence actions. As noted previously, exculpatory contracts are, by public policy,

disfavored in the law because they relieve one party of the obligation to use due care. Applegate, 974 So. 2d at 1114 (citing Cain, 932 So. 2d at 578); see Levine, 516 So. 2d at 1103 ("The rule is that an exculpatory clause may operate to absolve a defendant from liability arising out of his own negligent acts, although such clauses are not favored by the courts."); Goyings, 403 So. 2d at 1146 (same). Further, exculpatory clauses are only unambiguous and enforceable where the language unambiguously demonstrates a clear and understandable intention to be relieved from liability so that an ordinary and knowledgeable person will know what he or she is contracting away. Cain, 932 So. 2d at 578 (citing Gayon, 802 So. 2d at 420); Raveson, 793 So. 2d at 1173; cf. Univ. Plaza, 272 So. 2d at 509 (" 'A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms.' "). Moreover, as we stated in University Plaza, this Court's "basic objective . . . is to give effect to the intent of the parties. . . ." Id. at 511 (emphasis deleted). Accordingly, our decision is merely a rejection of the Sanislos' invitation to extend University Plaza, which applies to indemnity agreements, to exculpatory clauses.

## CONCLUSION

For the foregoing reasons, we conclude that the absence of the terms "negligence" or "negligent acts" in an exculpatory clause does not render the agreement per se ineffective to bar a negligence action. Accordingly, we approve the Fifth District's decision in Give Kids the World and disapprove the decisions of the First, Second, Third, and Fourth District Courts of Appeal in Levine v. A. Madley Corp., 516 So. 2d 1101 (Fla. 1st DCA 1987); Van Tuyn v. Zurich Am. Ins. Co., 447 So. 2d 318 (Fla. 4th DCA 1984); Goyings v. Jack & Ruth Eckerd Found., 403 So. 2d 1144 (Fla. 2d DCA 1981); and Tout v. Hartford Accident & Indem. Co., 390 So. 2d 155 (Fla. 3d DCA 1980).

It is so ordered.

LABARGA, C.J., and PERRY, J., concur.
CANADY and POLSTON, JJ., concur in result.
LEWIS, J., dissents with an opinion, in which PARIENTE and QUINCE, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LEWIS, J., dissenting.

Today the majority leaves our most vulnerable citizens open to catastrophe from those who seek to shield themselves from their own fault. Florida precedent mandates that because the advance liability release and hold harmless agreement signed by the Sanislos did not explicitly and unambiguously warn that Give Kids

the World would be released and held harmless for its own failure to exercise reasonable care as previously outlined and required under Florida law, no such waiver was made. I disagree with the decision of the majority that such explicit warning is required only for valid indemnity agreements, but not for combined releases, indemnification, and hold harmless agreements, such as the document in this case.

In University Plaza Shopping Center v. Stewart, 272 So. 2d 507, 509 (Fla. 1973), the Court considered whether an indemnity agreement in which one party agreed to indemnify another for "any and all claims" included those that arose solely out of the negligence of the indemnitee. The Court concluded that indemnification agreements will be effective against the negligence of the indemnitee only if that intention is expressed in clear and unequivocal terms. Id. The Court then held that an agreement to indemnify against "any and all claims" does not clearly and unequivocally express the intent to include claims that result exclusively from the negligence of the indemnitee. Id. at 511. The majority provides no logical basis to ignore that well established principle.

As the majority recognizes but fails to apply, exculpatory clauses that protect a party from his or her own negligence are disfavored. See Slip Op. at 7, 32; see also Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So. 2d 487, 489 (Fla. 1979). Based on this policy, the Court in Charles

- 34 -

Poe Masonry extended the holding of University Plaza to apply even where the indemnified party is jointly liable with the indemnitor. See id. at 489-90 ("Under classical principles of indemnity, courts of law rightfully frown upon the underwriting of wrongful conduct, whether it stands alone or is accompanied by other wrongful acts."). Additionally, courts strictly construe exculpatory clauses against the party that seeks to be relieved of liability. See Cain v. Banka, 932 So. 2d 575, 580 (Fla. 5th DCA 2006); see also Sunny Isles Marina, Inc. v. Adulami, 706 So. 2d 920, 922 (Fla. 3d DCA 1998). Courts have consistently required that explicit language be used in agreements that attempt to contract away liability for one's own negligence, and the language must be sufficiently clear and understandable such that an ordinary and knowledgeable person will comprehend the rights that he or she relinquishes. Gillette v. All Pro Sports, LLC, 135 So. 3d 369, 370 (Fla. 5th DCA 2014). The language here has previously been held to be insufficient. The public policy that disfavors exculpatory clauses should apply with equal force to all contracts that operate to remove a party's obligation to act with reasonable care.

Moreover, a hold harmless agreement is simply another term for an indemnification agreement. See 42 C.J.S. Indemnity § 23 (2014) ("The term 'hold harmless' means to fully compensate the indemnitee for all loss or expense, and an agreement to hold harmless is a contract of indemnity that requires the indemnitor

to prevent loss to the indemnitee or to reimburse the indemnitee for all losses suffered from the designated peril.") (footnotes omitted); see also Black's Law Dictionary 887 (10th ed. 2014) (stating that "indemnity clause" may also be termed "hold-harmless clause").  Accordingly, because the Court has previously held that indemnification agreements are ineffective against the negligence of the party being indemnified unless they clearly and explicitly state this intent in language that can be understood by an ordinary and knowledgeable person, agreements to release and hold harmless without such language should be deemed similarly ineffective.

The rational basis for this principle of law is that a general release and hold harmless agreement may not sufficiently warn the untrained signing party that the other party will not be responsible for its own negligent acts.  The signing party may instead understand the contract as an agreement that exempts the other party from any injury that occurs as a result of a third party.  For example, in this case, the Sanislos signed a contract that was both a release and a hold harmless agreement, and a number of other entities were involved in carrying out the wish that Give Kids the World granted, including food vendors and transportation providers.  The Sanislos could have understood that Give Kids the World would not be liable for the negligence of these other entities, and may not have understood that Give Kids the Worlds would not be liable for its own negligence.

As established under Florida law, a specific provision that explicitly states that a party will be released and held harmless for liability for its own negligence would clarify the nature of the release so that individuals would have full knowledge of what risks they undertake by signing such a contract.  There simply is no rational or logical legal reasoning that would require one to explicitly state a party will be indemnified for its own negligence as a condition of validity as is the current law, but not required to do so if that agreement also includes a release!

For these reasons, I dissent.

PARIENTE and QUINCE, JJ., concur.

Application for Review of the Decision of the District Court of Appeal - Certified Direct Conflict of Decisions

Fifth District - Case No. 5D11-748

(Osceola County)

Christopher Vincent Carlyle and Shannon McLin Carlyle of The Carlyle Appellate Law Firm, The Villages, Florida; and Michael J. Damaso, II of Wooten, Kimbrough & Normand, P.A., Orlando, Florida,

for Petitioners

Dennis Richard O'Connor, Derek James Angell, and Matthew J. Haftel of O'Connor & O'Connor, LLC, Winter Park, Florida,

for Respondent

Bard Daniel Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, Florida,

for Amicus Curiae Florida Justice Association