# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D17-4862

_____

ELIZABETH CASASANTA,

Appellant,

v.

SAILSHARE 296 LLC, and
WILSON MINGER AGENCY, INC.,

Appellees.

_____

On appeal from the Circuit Court for Okaloosa County.
William F. Stone, Judge.

April 16, 2019

ON MOTION FOR WRITTEN OPINION

PER CURIAM.

We have before us Appellant's motion for written opinion. We grant Appellant's motion, withdraw our former opinion from December 27, 2018, and substitute this opinion in its place.

*Background*

Appellant challenges final summary judgment orders granted in favor of Appellees, arguing that the exculpatory clause in a lease agreement was ambiguous and therefore unenforceable, and void as a matter of public policy.

In 2015, Appellant and her husband entered into a residential lease agreement for a single-family home. Appellant inspected the

property and agreed to take it in an "as-is" condition. While living on the property, Appellant brought a negligence action against Appellee Sailshare 296 LLC, the fee simple title owner of the property, and against Appellee Wilson Minger Agency, Inc., the property manager, alleging that a picket fence on the property collapsed, causing injury to Appellant.

In separate motions for summary judgment, both Appellees argued that the exculpatory clause in the lease agreement released them from liability for Appellant's injuries. The exculpatory clause at issue here reads:

> The Lessee(s) acknowledge and agree that they have independently examined and inspected the premises and are fully satisfied with the condition of the cleanliness and repair. The Lessee(s) agree that they waive any claims, rights or actions against Landlord, Agent or other person or entity for any alleged failure to disclose any defects in the premises. Lessee(s) further stipulate that they are leasing the property in "As-Is" condition and that no representations as to the present condition or future repair of the premises have been made except for those agreed upon in writing either made part of this agreement or by separate instrument.

The trial court granted final summary judgment in favor of Appellees, finding that the exculpatory language clearly and unambiguously relieved them of any liability for negligence. Appellant timely appealed the trial court's orders.

*Analysis*

The enforceability of a pre-injury exculpatory clause that does not contain express language releasing a part of liability for negligence is reviewed de novo. *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 260 (Fla. 2015). In *Sanislo*, the supreme court held that "the absence of the terms 'negligence' or 'negligent acts' in an exculpatory clause does not render [an] agreement per se ineffective to bar a negligence action." *Id.* at 271.

The lease agreement in this case supports the trial court's decision to grant summary judgment. Appellant and her husband

2

agreed upfront that they had independently examined and inspected the premises. They raised no complaints about the short, decorative picket fence out front. According to the lease, "no damage existed . . . [and the lessees were] fully satisfied with the [property's] condition of . . . repair." There was no indication, for instance, of rotting wood, missing slats, or any improper leaning or weakness with the fence. Having acknowledged no problems, lessees rented the property "As-Is" and broadly "waive[d] any claims, rights or actions against the Landlord, Agent or other person or entity for any alleged failure to disclose any defects in the premises." With these terms, we conclude that Appellant waived her claim against Appellees for failing to safely maintain, inspect, and repair a "dangerous" picket fence. *See Sanislo*, 157 So. 3d at 271.

In addition, Appellant's injury did not arise from a defect or a dangerous condition. The fence's modest features were "as apparent to the tenant as they were to the landlord." *Menendez v. Palms W. Condo. Ass'n*, 736 So. 2d 58, 62 (Fla. 1st DCA 1999). Rather, the accident and injury arose from Appellant's poor decision to use an insubstantial decorative fence as a seat. The three-foot fence was made with pointy, dog-eared pickets protruding from the top and was obviously not meant to support her weight. *See id.* at 61 (limiting the duty to correct defects or dangerous conditions to matters involving "inherently unsafe or dangerous conditions that are not readily apparent to the tenant").

AFFIRMED.

ROBERTS and OSTERHAUS, JJ., concur; B.L. THOMAS, C.J., concurs in result only with opinion.

————————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

————————————————

3

B.L. Thomas, C.J., concurring in result only.

I disagree with the majority's holding that the exculpatory clause was enforceable, but I concur with the decision to affirm because the picket fence was not a dangerous defective condition and therefore summary judgment was correctly granted to Appellees.

*The Exculpatory Clause*

For an exculpatory clause to be considered unambiguous and therefore enforceable, "the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away." *Southworth & McGill, P.A. v. Southern Bell Tel. & Tel. Co.*, 580 So. 2d 628, 634 (Fla. 1st DCA 1991). In *Sanislo v. Give Kids the World, Inc.*, the supreme court held that "the absence of the terms 'negligence' or 'negligent acts' in an exculpatory clause does not render [an] agreement per se ineffective to bar a negligence action." 157 So. 3d at 271. In *Sanislo*, however, although the clause did not use the word negligence, it expressly waived "any and all claims and causes of action of every kind arising from any and all physical or emotional injuries and/or damages . . . and physical injury of any kind." *Id.* at 261. The supreme court held that this clause was unambiguous and therefore enforceable because it had no other reasonable meaning than to bar negligence actions. *Id.* at 271.

By contrast, the clause at issue here does not clearly state what suits are purportedly waived, and it makes no mention of injuries caused by negligence or of injuries at all. A person of ordinary intelligence reading this clause might believe that, by agreeing to "waive any claims, rights or actions against Landlord, Agent or other person or entity for any alleged failure to disclose any defects in the premises[,]" he or she was merely waiving potential breach of contract or warranty claims for property defects. Such an interpretation is even more reasonable given that the clause was written into the section of the lease describing the lessee's obligations for damage caused to the premises; the clause speaks of "cleanliness and repair" and contrasts responsibility for damage to the property with damage incurred by "ordinary wear and tear." A lessee could therefore reasonably infer that this

4

exculpatory clause governs his or her financial responsibility for repairs, not personal injury lawsuits.

I disagree with the majority's holding that the clause at issue is unambiguous. I would hold that the exculpatory clause could not serve as the basis for a final summary judgment.

*Dangerous Defective Condition*

In *Menendez v. The Palms West Condominium Ass'n, Inc.*, this Court held that the absence of a doorscope in an apartment door was not a defect or a dangerous condition, and that the features of the door were "as apparent to the tenant as they were to the landlord." 736 So. 2d 58, 62 (Fla. 1st DCA 1999). Because there was no defect, the defendant had no legal duty to correct any defect. *Id.* Although this Court acknowledged a landlord's duty to protect a tenant under section 83.51, Florida Statutes, the Residential Landlord and Tenant Act, we held that the Act did not impose a duty to install doorscopes. *Id.*

Similarly, in *Fitzgerald v. Cestari*, a young child was injured when she ran through a sliding glass door. 569 So. 2d 1258, 1258 (Fla. 1990). The supreme court held that the landlord of the property was "relieved from liability for failing to ascertain that the sliding glass door was not made of safety glass as required by the applicable building code." *Id.* at 1260. The supreme court approved the summary judgment in favor of the landlord, holding:

> An ordinary sliding glass door is not the type of "dangerous condition" which a landlord is in a better position than the tenant to guard against. The presence of a sliding glass door on the leased premises was clearly apparent to the lessees who, upon taking possession, controlled the manner in which it was used.

*Id.* at 1261.

Here, the picket fence was clearly apparent and was not the type of dangerous condition which the landlord was in a better position than the tenant to guard against. Appellant controlled the manner in which the fence was used, *see Fitzgerald*, 569 So. 2d at 1261, and it is a matter of common understanding that a picket

5

fence is not designed to support the full weight of a person. *See Youngblood v. Pasadena at Pembroke Lakes South, Ltd.*, 882 So. 2d 1097, 1098 (Fla. 4th DCA 2004) (affirming summary judgment because, as a matter of common understanding, a towel rack was not designed to support the weight of a person). Because the picket fence did not constitute a dangerous defective condition, I would affirm the trial court's orders granting summary judgment, under the tipsy coachman doctrine. *See Gladden v. Fisher Thomas, Inc.*, 232 So. 3d 1146, 1147 n.1 (Fla. 1st DCA 2017) ("The 'tipsy coachman' doctrine allows an appellate court to affirm a trial court that 'reaches the right result, but for the wrong reasons' if there is 'any basis which would support the judgment in the record.'") (quoting *Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002)).

Appellee Sailshare did not argue absence of defect in its summary judgment motion. *See Agudo, Pineiro & Kates, P.A. v. Harbert Constr. Co.*, 476 So. 2d 1311, 1315 n.3 (Fla. 3d DCA 1985) ("the 'right for the wrong reason' appellate maxim does not apply in summary judgment proceedings where the issue was never raised in the motion for summary judgment."). However, at the time of Appellee Sailshare's summary judgment hearing, Appellee Sailshare had adopted Appellee Wilson Minger Agency's lack-of-defect argument, and the legal outcome of the issue would apply equally to both Appellees. *See Bernard Marko & Assocs., Inc. v. Steele*, 230 So. 2d 42, 44 (Fla. 3d DCA 1970) (holding that procedural issues "in no way prejudiced" the plaintiff, "because the defendants occupied the same legal position relative to the grounds of the motion for summary judgment"). Thus, because the trial court could properly have granted summary judgment based on the lack of any dangerous or defective condition, I would affirm the orders below on that basis.

---

Jonathan D. Simpson of Simpson Law Firm, Fort Walton Beach, for Appellant.

Richard S. Johnson, Niceville, for Appellee Sailshare 296 LLC.

Lucian B. Hodges and Richard A. Fillmore of Luther, Collier, Hodges & Cash, L.L.P., Pensacola, for Appellee Wilson Minger Agency, Inc.